THOMAS HENRY, Plaintiff in Error, v. DAVID D. MITCHELL and ROBERT M. RENICK, Defendants in Error.

*Attachment Levy—Execution Sale.*—When a tract of land has been laid out into blocks and lots, with streets and alleys dedicated to the public use, and some of the lots have been sold to third parties, an attachment subsequently levied upon the tract, by its description before subdivision, will be a nullity ; and an execution sale, under the judgment in the attachment suit, will not convey the title.

*Attachment—Description—Deed.*—The sheriff's return of the levy of an attachment upon land of the defendant should describe the land with as much certainty as a sheriff's deed.

*Error to Buchanan Court of Common Pleas.*

The facts are fully stated in the opinion.

*Loan,* for plaintiff in error.

I. The interest of A. M. Mitchell in the lots in controversy was liable to be seized on the attachment. (R. C. 244, § 19 ; Lisa v. Lindell, 21 Mo. 127 ; Lacky v. Seibert, 23 Mo. 93.)

In this State, the interest of a tenant in common, in any given part of the common property, is liable to be seized and sold on execution. This is an authority derived from our statute, and which is variant from the rule of the common law. If the defendant has any interest in the real estate seized on execution, however slight, it is liable to sale, (R. C. p. 470, 753, § 17, 73,) and there is no provision protecting

Henry v. Mitchell et al.

the interests of co-tenants. These estates are held subject to the incidents the law attaching to them—like a partnership, where the goods of the firm are subject to be seized and sold on an execution against one member of the firm, and where it is the duty of the sheriff to divest the other partners of the possession of their goods, and deliver them to the purchasers thereof. (Wiles v. Maddox, 26 Mo. 77.) So tenants in common hold their common property subject to a sale of a co-tenant's interest in any and every part thereof.

II. The levy of the attachment is sufficient.

Although a plat of South St. Joseph was filed in May, 1855, showing that the whole quarter section had been laid off into lots; yet, in point of fact, the south half of the quarter had been kept enclosed with a fence, and was not staked off into lots until about the time the attachment was levied on the same. Under such circumstances, the levying the attachment on A. M. Mitchell's undivided interest in the south half of said quarter section of land is sufficiently specific, and is good. (Rector v. Hart, 8 Mo. 448; Lisa v. Lindell, 21 Mo. 127; Scott et al. v. Hammond, 12 Mo. 8.)

III. The levy of the execution was sufficient.

The judgment in favor of Jaccard was a general one, and at this time it was generally known that the south half of said quarter section had been laid out in lots. The execution was levied upon A. M. Mitchell's interest in the lots, describing them by their numbers and blocks; and by further describing the whole as being situate upon the south half of said quarter section of land.

IV. The sale made by the sheriff is valid.

It is objected that it did not follow strictly the levy of the attachment. The tenants in common had separated the quarter section, in 1855, into two distinct and separate parcels, the north half of which was divided into many several and distinct parcels, by laying it out into town lots, in each of which the tenants in common owned an equal individual interest. The south half remained as the whole quarter had been previously held. On this the attachment was levied to

the extent of A. M. Mitchell's interest therein. About the time of this levy, and before a judgment was obtained against A. M. M., the tenants in common laid out the south half of said quarter section into town lots. By this act of separation or division into lots the tenants became seized of an equal undivided interest in each of said lots. At the time of levying the execution this subdivision into lots was generally known and recognized. The execution was levied upon A. M. Mitchell's interest in each of said lots, and described them in the aggregate as the south half of said quarter section of land, and advertised them accordingly and under the law.

It was the duty of the officer to sell them separately. A sale of A. M. Mitchell's interest in all the lots in the aggregate would have been irregular, and would have been set aside on motion. The sheriff could sell no more of Mitchell's property than was necessary to satisfy the execution.

V. The sheriff's deed conveyed to the purchaser all the interest that Mitchell had to the lots at the time the attachment was levied.

Under the rules of the common law, it has been decided that such a sale and conveyance would vest the property in the purchaser as between him and the execution defendant. (Bartlett v. Harlow, 12 Mass. 358.)

It was a title he was allowed to assert in a partition suit against the co-tenants of the defendant in the execution.

VI. It is assumed that under our law, that every one who must be made a party to a partition suit, under the 3d and 4th sections, p. 1111 R. C., may institute and prosecute such suit, &c. If this be true, it follows conclusively as a consequence, that if plaintiff acquired A. M. Mitchell's interest in the lots in contest, by and under the sheriff's deed, (and the court found that he did,) that he is entitled to have partition of the same.

He is entitled to have partition of the lots under the rule of the common law, which it is contended authorizes the sale of the co-tenant's whole interest, or a part of his interest, in the whole.

By the division of the land into lots, by the consent of all the tenants in common, they thereby became tenants in common of the several lots into which the land had been divided; and the whole interest therein of each of said tenants was liable to sale on execution, or either of the tenants might have partition of one or more of said lots.   (Smith v. Swearingen, 26 Mo. 557.)

*Hall* and *Vories*, for defendants in error.

I. The levy of the attachment upon the south half of said quarter section of land after the same had been divided into lots, blocks, streets and alleys, and a plat thereof had been acknowledged and recorded, was a nullity.   Not only had said land been so divided at the time of said levy, but the evidence shows that the line dividing the north half and south half of said land runs diagonally through a portion of the lots laid off in the same.   (Evans v. Ashley, 8 Mo. 185; R. C. 1855, § 22, chap. 12, act concerning attachments.)

II. The judgment in the case of Jaccard & Co. was a general judgment.   The execution conformed to the judgment. The sheriff, therefore, was not bound to follow the attachment levy, and all the evidence shows that he did not do so. He levied the execution on certain specific lots, and only on a portion of the lots into which the south half of said land had been divided.   The attachment was levied on the south half of said land, describing it by its numbers, and as eighty acres of land.   In the sheriff's advertisement no allusion is made to the attachment, and his deed is equally silent.   The sheriff sold, and he intended to sell, only such title to said lots as A. M. Mitchell had at the time of the levy of the execution.   The bidders, who were aware of the attachment, may have supposed their deed would relate back to the attachment levy.   But only a portion of the bidders knew of the attachment, and the result was, lots worth one hundred dollars, or more, were sold for twenty-five cents.

III.   The defendant and A. M. Mitchell were tenants in common, at the time of the levy of the attachment, in all the

lots, numbering several hundred, into which the whole of said quarter section had been divided. Neither of them had the right to have any particular lot partitioned. Their right was to have all of the lots partitioned. A sale by one of said tenants of his interest in any specific lot would have been void as to his co-tenants, and the sheriff could sell nothing which the tenant could not sell himself. (Bartlett v. Harlow, 12 Mass. 348; Smith v. Benson, 9 Vt. 138; Howe v. Blandon, 21 Vt. 315; 1 Greenleaf's Cruise, 402, note 1; 4 Kent's Com. 387, § 64; Blason v. Bright, 21 Pick. 283; Peabody et al. v. Minot et al., 24 Pick. 329; Baldwin v. Whiting, Spear et al., 13 Mass. 57; Starr v. Leavitt, 2 Conn. 246; Jewett's lessee v. Stockton, 3 Yerger, 492; French et al. v. Lund et al., 1 N. H. 42; Walker's American Law, p. 305; Staniford v. Fullerton, 6 Shepley, 130; 1 Hilliard on Real Prop., 593, et seq.)

IV. Under our statute the right to partition is incident to a tenancy in common. Neither tenant can defeat that right, nor can the creditors of any tenant do this. Notwithstanding the suit of Jaccard & Co. against A. M. Mitchell, his co-tenants had the right to have a partition of their common property. They might have partitioned it by suit without making Jaccard & Co. parties. Indeed, according to Hull v. Lyon, 27 Mo. 577, 571, Jaccard & Co. could not have been made parties to such a suit. Now, as A. M. Mitchell could have been compelled, by action, to make partition of the property notwithstanding the attachment suit of Jaccard & Co., he had the right to make partition without an action, for a person may always do voluntarily what the law will compel him to do by suit. If the partition between defendant and A. M. Mitchell was fair and honest, it is valid against plaintiff. Partition can be made by tenants in common notwithstanding the levy of an attachment upon the interest of one of the tenants. (Barrington v. Clarke, 2 Penn. 115, by Pen. & Wat.; Jackson v. Pierce, 10 John. 414; Wilkinson v. Parrish, 3 Paige, 653; Curley v. Allyn, 5 Greenl. 456; Randell v. Mallett, 2 Shep. 53; Brown v. Bailey, 1 Met. 257; Gregory v. Tozier, 24 Me. 309.)

V. There is no pretence that Jaccard & Co. were injured' by the partition made by defendants and A. M. Mitchell. The sheriff's return on the execution shows that he levied on and sold, under said execution, only a portion of the lots situate on said south half of said quarter section. On reference to the deeds of partition, it will be seen that a number of lots on said south half were conveyed to A. M. Mitchell that were levied on under said execution. Said lots last mentioned were worth a good many times the amount of the Jaccard judgment. The lots on said south half not sold by sheriff and conveyed by D. D. Mitchell to A. M. Mitchell, are all the lots of block 51, seven in number; all the lots of block 59, seven in number, and all the lots of block 55, fourteen in number. The whole number of lots assigned to A. M. Mitchell on said south half is one hundred and nineteen; and besides this, about two acres in a reserved block, as appears from the partition deeds and plats in evidence.

BATES, Judge, delivered the opinion of the court.

On the 15th of May, 1855, Alexander M. Mitchell, D. D. Mitchell, and Robert M. Renick, were the owners of a quarter section of land adjoining the city of St. Joseph, in Buchanan county, and laid out the same into blocks and lots, with streets and alleys intersecting and separating the same, as an addition to the city of St. Joseph, called South St. Joseph, and on that day filed in the office of the clerk of the Circuit Court of Buchanan county a plat of the same, and thus dedicated to public use the streets, alleys, and public grounds marked thereon.

On the 29th April, 1857, Jaccard & Co. sued A. M. Mitchell in the St. Louis Circuit Court by attachment. The writ issued to the sheriff of St. Louis was personally served on A. M. Mitchell, and he appeared to the action and answered; and upon a counterpart to Buchanan county, the sheriff of that county attached the undivided interest of the defendant in "the south half of" said quarter section, describing it by the number of section, township and range. On the 2d

day of November, 1858, in said cause a general judgment was rendered rgainst A. M. Mitchell for six hundred and eighty-one $\frac{50}{100}$ dollars, with general award of execution. A general execution was issued to St. Louis county, and returned *nulla bona,* and on the 7th day of July, 1859, a general execution was issued to Buchanan county, upon which was endorsed by the clerk " sell property levied on by virtue of attachment, viz., undivided interest of Alexander M. Mitchell in and to the south half of the southeast quarter of section 17, T. 57, R. 35, containing 80 acres."

The sheriff's return on the execution shows that he levied the execution upon a great number of lots, describing them by the numbers of the lots, and of the blocks in which they were situated, " on the south half of " said quarter section, describing it ; and that he had sold them to different named persons, including certain lots sold to the plaintiff; and the sheriff made a deed to the plaintiff for the lots sold to him, dated 24th September, 1859. None of the proceedings of the sheriff under the execution refer to the levy under the attachment. The plaintiff claims title under that deed to one undivided third part of the lots described in it.

On the 5th of June, 1857, D. D. Mitchell (who represented and held the interest of Renick as well as his own) and A. M. Mitchell made a partition of the lots held by them, and executed to each other deeds, so as to vest in each the whole title to the lots conveyed, and A. M. Mitchell, by means of the deed executed by him in carrying out that partition, conveyed his interest in the lots in dispute to D. D. Mitchell.

In this suit D. D. Mitchell claims the whole title to said lots, and denies that the plaintiff has any right therein.

It appeared at the trial that when the levy under the attachment was made, a number of the lots in the addition, but within the northern half of the quarter section, had been sold, and houses had been built upon some of them. It appeared, also, that a line dividing the south from the north half of the quarter section would run diagonally through a long row or tier of the lots as laid out.

It will be perceived from the above statement, that in order to make the plaintiff's title good it must date back to the levy of the attachment. The first question, therefore, to be considered, is the validity of the levy under the attachment. We have no hesitation in declaring that, under the circumstances above stated, that levy was a nullity. The levy must describe the land with as much certainty as a sheriff's deed. Here was a quarter section of land which had been owned by three tenants in common, who had divided it all up into blocks and lots, with streets dedicated to public use separating the blocks, and with some of the lots sold to third persons and occupied by them; and the sheriff levies upon the undivided interest of one of the tenants in common in a distinct portion of the land originally held in common, by a description only appropriate to its original state, when its state had been so changed that it was no description at all of the existing lots. The sheriff might just as well have described it as the south half of the city of St. Joseph.

Other questions were discussed in the cause, but as this one finally disposes of the whole case, they will not be noticed.

Judgment affirmed. Judges Bay and Dryden concur.