STEWART, *Appellant*, v. PERKINS *et al.*

Division One, June 20, 1892.

1. **City Plat, Acknowledgment of:** DEPUTY RECORDER. An acknowledgment of a town plat taken in 1868 by a deputy recorder of deeds is valid.

2. ———: JUDGMENT LIEN: LAND TITLE. A purchaser of lots sold under a recorded plat loses all interest therein by sale under a judgment antedating the filing of the plat.

3. ———: ———: ———. Where property is platted as an addition to a city, and is thereafter described in a sheriff's deed without regard to the plat but by its prior name, and it is so known in the neighborhood and assessed for taxes, the description in the deed will pass the title.

4. **Attorney and Client:** ABUSE OF CONFIDENCE. The evidence in this case examined and *held* to show no abuse by an attorney of the confidence reposed in him by his client.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

THE following is the plat referred to in the opinion of the court:

*Porter & Woodson* for appellant.

(1)   The plat of Hays' second railroad addition is objected to for the reason that the acknowledgment was taken by the deputy recorder; while the statute in force at the time did not in terms provide for the appointment of a deputy recorder, it did by express provision recognize such deputy by providing for his compensation.   G. S. 1865, sec. 29, p. 162.   This was a legislative sanction of the recorder's right to appoint and the legal capacity and the qualification of the deputy to perform the duties of the office.   *Small v. Field,* 102 Mo. 118, and authorities cited; Mechem on

Public Officers, secs. 569, 570, 733. Recorder of deeds is a ministerial officer. Mechem on Public Officers, sec. 733. And has authority at common law to appoint a deputy. 5 Comyn's Digest, title officer (D. I.), 135; American & English Encyclopedia of Law, title deputy, p. 624; Mechem on Public Officers, sec. 798; 1 Devlin on Deeds,. secs. 473–475. If appointed without authority, he is a *de facto* officer, and his acts cannot be impeached collaterally. Mechem on Public Officers, secs. 330, 733; *Woodruff v. McHary*, 56 Ill. 218; *Hamilton v. Pitcher*, 53 Mo. 334; 1 Devlin on Deeds, secs. 471–2; Martindale's Law of Conveyancing, sec. 256. (2) When Hays platted the land he destroyed its identity by its original description, and the law will enforce recognition of the new description which the statute authorizes to be made. A sheriff's sale by the original description is void. *Evans v. Ashley*, 8 Mo. 178; *Hart v. Rector*, 7 Mo. 532; *McPike v. Allman*, 53 Mo. 558; *Cromwell v.* *Thurston*, 59 Mo. 157; 2 Freeman on Executions [2 Ed.] secs. 281, 330; 2 Devlin on Deeds, sec. 1432; *Clemens v. Rannells*, 34 Mo. 579; *Henry v. Mitchell*, 32 Mo. 512; 12 American & English Enclycopedia of Law, p. 211, title, judicial sales. (3) The sheriff's deed to Matney, if operative to convey the interest of Hays, could not have the effect to divest plaintiff's title to the lots in controversy acquired before the sheriff's sale. (4) The existence of judgment liens does not interfere with the right of a proprietor to plat his lands under the statutes providing for laying off additions to towns and cities. While it is denominated a judgment lien, it is not a lien on any specified property, but a charge on all the property of the debtor, to be enforced by execution against such as may be levied. 1 Jones on Liens, sec. 13, and cases cited; *Conrad v. Ins. Co.*, 1 Pet. 443: *Warner v. Veitch*, 2 Mo. App. 642. (5) Counsel who has been consulted about title to land will not be permitted to

purchase an outstanding one and set it up in opposition to his client. *Davis v. Kline*, 96 Mo. 406. The sheriff's deed to defendant does not affect plaintiff's title. *Geralden v. Howard*, 103 Mo. 40; *Stafford v. Fizer*, 82 Mo. 393; *Bank v. Greene*, 84 Mo. 477.

*Benjamin Phillips* for respondents.

(1) The law, making judgments a lien for five years, was constitutional. *Riggs v. Goodrich*, 74 Mo. 118; *Ellis v. Jones*, 51 Mo. 181; *Bush v. White*, 85 Mo. 339; *McCoy v. Cassiday*, 96 Mo. 431; *Coe v. Ritter*, 86 Mo. 277; *Kane v. McCowan*, 55 Mo. 183. (2) The description contained in the sheriff's deed to Matney, dated the tenth day of April, 1869 (through which respondents claim title), was sufficient. *Baker v. Clay*, 101 Mo. 553; *Hammon v. Johnson*, 93 Mo. 199; *Brown v. Walker*, 85 Mo. 263; *McPike v. Allman*, 53 Mo. 551; *Cornwall v. Thurston*, 59 Mo. 157; *Schreiber v. Osten*, 50 Mo. 513; *Marvin v. Elliott*, 99 Mo. 616. (3) The same presumptions are indulged in, in relation to a sheriff's deed, as would be applied to other deeds. *Wellshire v. Kelly*, 69 Mo. 643; *Evans v. Robinson*, 92 Mo. 192. (4) The property sold at a sheriff's sale and described in the sheriff's deed may be identified by parol. *Hammon v. Johnson*, 93 Mo. 214; *Landis v. Perkins*, 12 Mo. 239; *Bates v. Bank*, 15 Mo. 309; *Bank v. Bates*, 17 Mo. 583; *Webster v. Blount*, 39 Mo. 500; *Bollinger Co. v. McDowell*, 99 Mo. 632; *Charles v. Patch*, 87 Mo. 451; *Baker v. Clay*, 101 Mo. 553; *Allen v. Moore*, 67 Mo. 101; *Schreiber v. Osten*, 50 Mo. 513; *Brown v. Walker*, 85 Mo. 262. (5) Respondent Zimmerman's possession is sufficient to defeat appellant's cause of action unless he shows a superior paper title. *Duncan v. Able*, 99 Mo. 189; *Wilcoxen v. Osborne*, 77 Mo. 662; *Pike v. Robertson*, 79 Mo. 615; *Marvin v. Elliott*, 99 Mo. 616.

SHERWOOD, P. J.—In 1889, plaintiff brought eject-
ment for lots 9, 10, 11, 12, 13, Hays' second railroad
addition to the city of St. Joseph. The defendant Zim-
merman is the real defendant in the action, and Perkins
is his tenant, and defendant has been in possession
since 1883 or 1884.

William Noble was the patentee of the northeast
quarter of section 20, township 57, range 35, Buchanan
county, Missouri, which patent was recorded January
2, 1873, in Buchanan county. William Noble after-
wards made his will; by the provisions of the will Levi
Johnson was made his sole heir, and Russell A. Rinkle
executor and guardian of the said Levi Johnson.

At the partition sale of this property, E. O. Hays
purchased lot 5, in block 2, Noble tract, and in support
of this offered in evidence a sheriff's deed, executed by
the sheriff of Buchanan county, dated the fifteenth day
of April, 1858, which conveyed among other property
lot 5, block 2, Noble tract, to E. O. Hays.

Plaintiff, over the objection of defendant, intro-
duced in evidence a plat of E. O. Hays of block 2 of
the Noble tract. The plat or division of ground was
called "Hays' second railroad addition." The plat was
acknowledged, Geo. A. Pearcy, recorder, by Thomas S.
Pearcy, deputy recorder, and was recorded March 21,
1868.

Plaintiff introduced in evidence a deed from E. O.
Hays to Hugh Stewart to the lots described in the deed
as 9, 10, 11, 12 and 13 in block 1, in —— railroad
second addition to the city of St. Joseph. There was
no evidence introduced explaining this description.
The consideration in the deed was $350.

Hugh Stewart, the plaintiff, testified that he paid
$100. There is no evidence that he ever paid any taxes
or was ever in possession. The deed from Hays to
Stewart was dated the fourteenth day of May, 1868.

Plaintiff proved that defendant Zimmerman had been in the actual possession, and had fenced this ground in the year 1883 or 1884, and that prior to that time the same had been vacant and unoccupied.

Defendant Zimmerman claimed to be the owner of lot 5, block 2, Noble tract, by virtue of possession, and by and through the conveyances, offered in evidence.

On the thirtieth day of June, 1864, judgment was rendered in favor of James A. Matney against E. O. Hays for the sum of $1,090.80, and costs; execution was issued upon this judgment, while the judgment was in full force, and lot 5, block 2, Noble tract, was sold and purchased by James A. Matney. The sheriff's deed conveying this property to Matney was executed the tenth day of April, 1869, and was recorded April 30, 1869. Matney afterwards on the fifteenth day of November, 1871, mortgaged lot 5, block 2, Noble tract, to Buchanan county for school money; this mortgage was filed for record November 16, 1871. Lot 5, block 2, Noble tract, was by order of the county court ordered to be sold in satisfaction of the school mortgage, given to the county as aforesaid. At the sheriff's sale in satisfaction of this mortgage, E. C. Zimmerman became the purchaser of said lot. The sheriff's deed executed to Zimmerman in pursuance of such purchase was dated on the seventh day of October, 1879, and was recorded November 11, 1879.

The defendants also introduced in evidence a quitclaim deed from James A. Matney, conveying to defendant, Eugene C. Zimmerman, lot 5, block 2, Noble tract. This deed was dated on the thirteenth day of September, 1887, and recorded the same day.

Defendants offered in evidence sheriff's deed to lot 5, in block 2, Noble tract, to E. C. Zimmerman in satisfaction of a judgment against James A. Matney for the state and county taxes levied upon said lot. This

deed was dated the nineteenth day of September, 1881, recorded the twenty-seventh of September, 1881. Defendants also introduced in evidence tax receipts for the city, state and county taxes from the year 1869 up to the time of the institution of suit, with the exception of one year when said lot was sold for city taxes, and was purchased by Zimmerman.

Defendants called as witnesses the county assessor and city collector and treasurer, who testified that lot 5, in block 2, Noble tract, had always been assessed by that description, and was generally known by that description. The county assessor stated that for the year 1869 the lots described in plaintiff's petition had been assessed as in Hays' second railroad addition.

J. C. Hedenberg testified that he was an abstracter, and in looking over his records had made discoveries in relation to the platting of Hays' second railroad addition, information of which he imparted to plaintiff's counsel, and that in consideration of such information he received a deed of trust on a part of Hays' second railroad addition.

Hugh Stewart, the plaintiff, testified: "I went to Mr. Zimmerman as a lawyer, I think it was in '73 or '74; I asked him for information; I told him I had paid Mr. Hays $100 on this and asked him what I should do, and he looked up the case for me, and told me it would be very foolish to pay anything more on this; that Johnnie Hays had a judgment in the court of common pleas against this, and that I could not do anything, so that I would be very foolish to pay anything more on this property; I cannot remember everything he said just now, being just getting out of bed sick, and I feel weak and nervous; I hav'n't my recollection about me." Zimmerman denied any such conversation.

At the close of the evidence, the court gave an instruction in the nature of a demurrer to the evidence, and the plaintiff took a nonsuit.

Other facts, if material to be recited, will be touched upon, as becomes necessary in the course of the following

OPINION.

I.   The certified copy of the plat "offered in evidence by plaintiff which will accompany this opinion was properly admitted in evidence, so far as concerns the objection made that the acknowledgment was taken before a deputy recorder of deeds, the claim being that no such officer was known to the law in 1868, when the acknowledgment was taken.

A recorder of deeds being a ministerial officer has at common law authority to appoint a deputy.  In addition to that, section 29, page 162, General Statutes, 1865, gives recognition to recorders of deeds appointing deputies by providing for their payment.  *Small v. Field*, 102 Mo. 118.

II.   The objection to the acknowledgment of the plat being thus eliminated from this discussion leaves the way open to discuss the differing descriptions of the land in controversy, under which the parties litigant respectively claim title, and to settle the question of precedence between them.

The case at bar is wholly unlike the case of *Henry v. Mitchell*, 32 Mo. 512, cited by counsel for plaintiff; for there the tract of land had been laid out into town lots, blocks and streets, some of the lots sold, and *afterwards* an attachment was levied on the tract as it was originally, and a sale occurred under an execution issued on a judgment rendered in the cause, and it was rightly held that in the circumstances mentioned the

whole proceedings were worthless, and that no title passed. Nor does this cause resemble in its incidents the other cases cited by plaintiff. Here the tract of land was bound by the judgment lien in favor of Matney, at the time Hays filed his plat for record. Having done this, he executed a deed to the lots in question to plaintiff; but afterwards the whole tract bound by the judgment lien, to-wit, lot 5, in block 2, Noble tract, was sold under an execution issued on the Matney judgment, and he became the purchaser and received a deed conveying the land according to the description just mentioned.

This being the case, there can be no doubt that the execution sale, occurring as it did prior to the expiration of five years from the rendition of the judgment, was made in time to enforce this judgment lien. *Ellis v. Jones*, 51 Mo. 181; *Coe v. Ritter*, 86 Mo. 277.

III. The effect of that sale was to sweep away all junior incumbrances and conveyances placed on the land by the judgment debtor Hays. It has frequently been ruled by this court that such is the effect of the foreclosure and enforcement of a prior mortgage lien (*Plum v. Mfg. Co.*, 89 Mo. 162; *Funkhouser v. Lay*, 78 Mo. 458; *Heirs of Mullanphy v. Simpson*, 4 Mo. 319; *Sims v. Field*, 66 Mo. 111; *Benseick v. Cook*, ante, p. 173); and no different result can logically follow and attend the enforcement of a prior judgment lien.

In *McShane v. City of Moberly*, 79 Mo. 41, it was ruled that no one but the *absolute* owner of the land can dedicate land to a public use so as to pass the fee, and that the dedication of land upon which there is a deed of trust is subject to be avoided by a sale under the deed. In that case Young conveyed the land to Buchanan by deed of trust, afterward Young sold to Burkholder and others, and Burkholder filed for record a map of a second addition to Moberly dedicating

thereby certain streets, etc. The dedication was accepted by the city, and a certain street marked on such second addition was accepted by the city and improved and worked for several years as a public street. Afterwards a sale occurred under the deed of trust, and the tract of land *as described therein* was sold, and by mesne conveyances passed to McShane, who brought suit in ejectment against the city for a certain street, and was successful in the circuit, as well as in this court. In that case a number of authorities are cited illustrating the position that a mortgagor after making a mortgage is powerless to do any act which would alter or abate the estate by him granted to the injury of the mortgagee, and that one who pending the mortgage buys of the mortgagor only buys an equity of redemption which fails when foreclosure of the mortgage occurs. Now if the same incidents and consequences attend the enforcement of a judgment lien, as confessedly is the case in the enforcement of a mortgage lien, then it must needs follow that Matney's title acquired at the sheriff's sale was superior to that of the plaintiff.

The case of *Masterson v. Railroad*, 72 Mo. 342, is relied on by plaintiff as sustaining a view contrary to the one here expressed; but if that case goes so far it is not supported by authority, and is contrary to the ruling in *McShane's case, supra*.

IV. And there is no doubt of the sufficiency of the description of the property thus sold at execution sale, when considered with reference to the identifying testimony which was introduced. As before stated the property was described in the sheriff's deed to Matney, as lot 5 in block 2, Noble tract. It was competent to show by parol what was intended by that description. This is clearly established by the authorities cited for

·defendants. Indeed, those authorities show that in sheriff's deeds descriptions bearing on their face many more elements of vagueness and uncertainty have been upheld by this court upon the showing made that the property was known in the neighborhood by the description recited in the deed.

The city treasurer and *ex-officio* collector of revenues testified that it had always been known by that description, and had always been assessed by that ·description. The county assessor testified that it had always been known and assessed by the description ·of lot 5, block 2, Noble tract.

Hedenberg, the abstracter, who was a witness for plaintiff, also testified that the ground had been known prior to Hays' platting it, and since, as lot 5, block 2, Noble tract, with the exception of the year 1869, when it was assessed as platted by Hays.

V. After Matney became the purchaser of the land as described in the sheriff's deed to him, he mortgaged it to the county in 1871, by the same description to secure a loan of school money. Upon default being made in the payment of this loan, and in consequence thereof, the land was sold by order of the county court, and defendant Zimmerman purchased at that sale which occurred in.1879, and received a deed; this sale passed the title of Matney to him. He also received in 1887, from Matney, a quitclaim deed for the premises. Inasmuch as Zimmerman acquired the title to the property in the manner stated, it is unnecessary to inquire what interest he acquired by reason of the tax proceedings against Matney.

VI. But one point remains for discussion, and that is in relation to legal advice Zimmerman is said to have given to Stewart in 1873 or 1874, relative to the property he had bought of Hays in 1868. Zimmerman explicitly denies any such transaction, and then Stewart

testifying at the distance of sixteen or seventeen years after the alleged conversation evidently does not remember with distinctness what actually did occur. Again it does not appear that Zimmerman was consulted as to the *Matney* title which he bought, but as to the *Hays* title, and for aught that appears Johnnie Hays did have a judgment against the land as already stated.

Besides, the purchase made by Zimmerman of the Matney title occurred some five or six years after the alleged conversation with Stewart. It nowhere appears in this record that Zimmerman, if he really was employed by Stewart, was guilty of any abuse of the confidence reposed in him by Stewart, or that he took advantage of any knowledge he may have acquired in his professional capacity. This case, therefore, does not fall within the rule laid down in *Davis v. Kline,* 96 Mo. 401.

For these reasons, the judgment should be affirmed. All concur except BARCLAY, J., absent.