OCEAN CITY HOTEL AND DEVELOPMENT COMPANY, PLAINTIFF IN ERROR, v. RICHARD R. SOOY, DEFENDANT IN ERROR.

Argued November 25, 1908—Decided June 14, 1909.

1. The conveyance of a lot bounded by a street delineated upon a map, to which reference is made in the deed therefor, does not estop the grantee to deny the title of the grantor to land embraced within the limits of the street.

2. Whether a conveyance of land bounded upon a street delineated upon a map, to which reference is made in the deed therefor, includes the land to the centre line of the street as delineated, is a question of intention, and if at the time of the conveyance the land covered by the street is in part washed by the ocean, the line of the grantee's land can extend no further than the middle of the street as it actually exists at the time upon the ground.

3. The Ocean City Association, in 1880 and 1882, conveyed land to one Mathews, describing it by reference to a map of lots owned by the association, and bounding it upon one of the streets delineated upon the map. *Held*, that if at the time of the conveyance the ordinary high tide of the ocean covered the whole of the land within the bounds of the street, Mathews was the riparian owner and entitled to the subsequent accretions, but that if the ordinary high tide at that time did not cover the whole of the street, the association remained the riparian owner and entitled to the subsequent accretions.

On error to the Supreme Court.

For the plaintiff in error, *Gilbert Collins* (*Bleakly & Stockwell* and *John W. Wescott,* on the brief).

For the defendant in error, *George A. Bourgeois* and *Albert A. Howell* (*Bourgeois & Sooy,* on the brief).

The opinion of the court was delivered by

SWAYZE, J.  This is an action of ejectment for a tract of land in Ocean City, bounded by the middle line of Atlantic avenue on the northwest, by the Atlantic ocean on the southeast, by the middle line of Seventh street on the southwest and

by a line parallel thereto and three hundred and thirty feet
distant on the northeast.   Both plaintiff and defendant claim
title under grants from the Ocean City Association, the plaint-
iff, under a deed to Izard, dated October 28th, 1905; the
defendant under two deeds to Charles Mathews, one dated
July 26th, 1880, and the other dated September 4th, 1882.
The deeds to Mathews do not in terms include the *locus in quo,*
and the defendant's title thereto rests upon an alleged right
of accretion.   His claim is that the land conveyed to Mathews
to whose title he has succeeded, bordered upon the Atlantic
ocean at the time those conveyances were made.   The deeds to
Mathews described the lands conveyed by reference to lot num-
bers on the plan of lots of the Ocean City Association, and as
lying on the northwesterly side of Atlantic avenue.   At the
time these deeds were made the only map which had been filed
by the Atlantic City Association was the map filed June 9th,
1880.   Upon that map Atlantic avenue is delineated as ex-
tending from First street near the northerly end of the whole
tract southerly as far as Fifth street; south of Fifth street the
northwesterly line only of the avenue is delineated upon the
map; no southeasterly line is shown in front of the land con-
veyed to Mathews.   The only lines oceanward are two irregu-
lar curved lines, which seem to be intended to indicate the
lines of the ocean; these lines are outside of the southeasterly
line of Atlantic avenue if extended.   The width of Atlantic
avenue where both lines of the street are shown is seventy feet.
The trial judge charged that if when the deeds were made to
Mathews the ordinary high-water line of the Atlantic ocean
came up on the lots, was northwesterly of Atlantic avenue,
Sooy became the owner of the *ripa* and would be entitled to the
accretion; that the maps were not conclusive but were to be
given such weight as the jury thought their importance and
accuracy entitled them to.   He also charged as follows: "If
you find that the Ocean City Association intended Atlantic
avenue to be seventy feet in width southerly of Sixth street,
when said avenue should afterwards be laid out, and conveyed
lots numbered 985, 987, 989, 991, 993 and 995, in section A,
by a description calling for Atlantic avenue as a boundary,

and the high-water line of the Atlantic ocean at time of conveying said lots extended to or washed the centre of said avenue in front of said respective lots, then and in that case your verdict should be for the defendant." The charge, therefore, permitted the jury to find a verdict for the defendant in either of two situations—*first*, if at the time of the conveyances to Mathews the high water washed the lots as described in his deeds; or, *second,* if it came up as far as the middle line of Atlantic avenue, thirty-five feet southeast of the boundary line of the lots as described in the deeds. The jury found a verdict for the defendant.

The plaintiff in error argues that the first portion of the charge was erroneous for the reason that both parties are estopped by the map and by the reference in the Mathews deeds to Atlantic avenue as a boundary. That they are estopped to some extent is conceded by the defendant in error, for he argues that the plaintiff in error is estopped to deny that Atlantic avenue existed as a street at that point seventy feet in width. The issue between the parties, therefore, is the extent to which the estoppel is to be carried. It is essential for the plaintiff in error, who is the plaintiff in ejectment, to establish a title to the *locus in quo,* and the exact question presented, therefore, is whether the conveyance to Mathews, by reference to the map and to Atlantic avenue as a boundary, is conclusive proof as between the parties that at that time the plaintiff had title to the soil covered by Atlantic avenue. We think that such a conclusion does not necessarily follow. It may well be that at the time of these conveyances the whole of Atlantic avenue was under the waters of the ocean, and therefore the property of the state. This would not prevent the parties to those conveyances from delineating such a street upon the map and referring to it as a boundary, and while these facts could not effect a dedication of the state's land, they would operate by way of estoppel as against the parties to the conveyances, so that if the ocean receded the parties could not deny the dedication. The principle is the same that was established in *Jersey City* v. *Morris Canal and Banking Co.,* 1 *Beas.* 547, and applied in *Hoboken Land and Improve-*

*ment Co.* v. *Hoboken, 7 Vroom* 540. It is obvious that the mere fact that a street is referred to as a boundary and is delineated upon a map indicates nothing as to the title to the land covered by the street, for the title to the street might well be in a third party, and yet the street properly be delineated upon a map and referred to in a conveyance between other parties. Such a case is *Dunham* v. *Williams, 37 N. Y.* 251. The possibility was recognized by Justice Magie in his opinion in *Ayres* v. *Pennsylvania Railroad Co., 19 Vroom* 44, 49, 50. The estoppel does not go as far as claimed by the plaintiff in error, and it was doubtless for this reason that this court in a similar case arising out of this very map did not consider the fact that a lot was bounded upon a street as conclusive upon the question whether or not the line of high water reached the lot as described by metes and bounds or not. *Ocean City Association* v. *Shriver, 35 Id.* 550 (at *p.* 566), Chief Justice Depue said: "If, on the other hand, the line of ordinary high tide in 1884, when the association conveyed its title, was on this lot, then, by force of the conveyance to Howell, he became the riparian owner, and he and his grantee are entitled to the accretions."

The trial judge properly, therefore, charged in accordance with the rule laid down in the case last cited. We think, however, that he failed to give to the map the force as evidence to which under that case it is entitled. Although the map and the deeds are not conclusive as to the line of the ocean in 1880 and 1882, they are evidence that at the time the map was filed the line of the ocean did not reach the lots conveyed to Mathews, and the lines delineated upon the map of 1883 are evidence that at that time no change had occurred sufficient to bring the ocean within the line of Atlantic avenue. We said in the Shriver case, referring to the lines upon this map, that it appeared there was a considerable space of undivided land lying between that portion of the association's property which was then in dispute and the Atlantic ocean, and that Ocean avenue was delineated on the map as practically parallel with and some distance from the ocean, and we added that the map of 1883 showed a line of high water in 1882 located two

hundred and fifty feet east of the easterly line of Ocean avenue, and that between that line and Ocean avenue appeared a space of unplatted land. This language of Chief Justice Depue's opinion refers to the irregular line which we have already referred to as probably indicating the line of the ocean, and his remarks as to its location with reference to Ocean avenue are applicable *mutatis mutandis* to Atlantic avenue in front of the lots now in question. We call attention to these facts in order that they may be brought to the attention of the jury upon a retrial of the case.

Such a retrial will be necessary for the reason that the trial judge erred in the second branch of the charge above set forth. The description of the lots conveyed to Mathews bounds them upon the northwesterly line of Atlantic avenue. If those deeds conveyed any land southeast of that line and within the boundaries of Atlantic avenue, it is only by virtue of the rule which extends the bounds of a grant of land abutting upon a public street. The ordinary rule in such a case is that established in *Salter* v. *Jonas,* 10 *Vroom* 469, but that rule is a rule of construction only. Chief Justice Beasley was careful to say: "The particular words should, in such transactions, be controlled and limited by the manifest intention which is unmistakably displayed in the nature of the affair and the situation of the parties. When the conditions of the case are altered, as if the vendor should, in a given case, have an apparent interest to reserve to himself the parcel of street in question, a different rule of interpretation might become proper." The rule adopted by the trial judge went farther than was justified by the decision in *Salter* v. *Jonas,* for he extended the grant beyond the middle line of the actual street as it was in case the high-water line came west of the southeasterly line of the avenue, and he fixed the southeasterly boundary of the Mathews grant as a line thirty-five feet southeast of the line given by the deed. It has been held in the Supreme Court of the United States, that where the street is actually existing is narrower than as delineated upon the map, the grant can only be extended to the centre line as actually existing. *Banks* v. *Ogden,* 2 *Wall.* 57. This rule has, in addition to the great

weight due to a decision of that court, the support of sound reason, in that it effectuates the probable intent of the parties. It is argued by the defendant in error that the rule is not applicable to the present case for the reason that the plaintiff in error is estopped to deny that Atlantic avenue was seventy feet in width. If that were so the defendant in error would be equally estopped, for the estoppel must be mutual, especially in a case like the present, where the deed is actually signed by both grantor and grantee. If Atlantic avenue, then, be held as between the parties hereto by virtue of the estoppel to be seventy feet in width, it follows that the defendant in error is estopped to deny that the Ocean City Association retained a portion of the street itself. In other words, the defendant in error cannot rely upon this mutual estoppel and set up in opposition thereto a claim that the whole of the existing street passed under the Mathews deed. If that were not so, however, the learned trial judge was in error, for if in fact the line of high water reached as far to the northwest as the middle line of Atlantic avenue, it is quite clear that the Ocean City Association could not have intended to convey the whole of the strip between the line of the Mathews conveyance and the line of high water to Mathews. The very fact that the map shows as it does an unoccupied space to the southeast of Atlantic avenue, in front of the lots in question, is an indication that the Ocean City Association meant to retain to itself the actual shore. The value of riparian rights was recognized long before 1880, and the vendor, to use the language of Chief Justice Beasley in *Salter v. Jonas,* had an apparent interest to reserve to himself the parcel of street in question. The very case of riparian rights is referred to in *Jones Real Property Con.,* § 459, citing *Brisbine v. St. Paul and S. C. R. Co.,* 23 *Minn.* 114. In any aspect of the case, if the ocean did not actually wash the lots conveyed to Mathews as described by metes and bounds in his deeds, at the time of the conveyances, his grantee is not the riparian owner, and therefore not entitled to the accretions. The question to be submitted to the jury is that stated in the Shriver case, and that alone; whether the line of ordinary high tide at the time the association conveyed to

Mathews was on his lots—that is, whether it covered the whole of the land within the bounds of Atlantic avenue. If it did, his grantee is entitled to the accretions subject to the dedication of the avenue. If it did not, the plaintiff, as the subsequent grantee of the Ocean City Association, is entitled to those accretions.

As the case must be retried, we think it well to call attention to two minor matters. The trial judge charged the jury that the plaintiff was bound by the statements of the Ocean City Association respecting the title, made while the Ocean City Association was the owner of the land. No doubt those statements, if contrary to the interest of the Ocean City Association, were admissible in evidence against its grantee, but it was an inadvertence to charge that the plaintiff was *bound* thereby. The judge also allowed testimony, with reference to a survey and return made by the board of proprietors of West Jersey, that the surveyors had the right to extend the surveys, and that it was a custom in making surveys where the land was bounded by high water to so extend them, and that the board of proprietors had knowledge of such extensions at the time they granted the survey or granted the patent to the land. This evidence was offered, as stated by the brief of the defendant in error, to meet an attack made by the plaintiff upon a return made by one Haines, apparently for the purpose of showing that that return which had been offered in evidence by the defendants themselves was not entirely accurate. We think this evidence was not admissible.

The judgment must be reversed and the record remitted for a new trial.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J.   14.