BEACH FRONT HOTEL CO. v. SOOY.†

(Circuit Court of Appeals, Third Circuit. July 22, 1912.)

No. 42 (1,605).

1. NAVIGABLE WATERS (§ 46*)—BEACH LAND—ORDINARY HIGH-WATER MARK
—QUESTION FOR JURY.

In ejectment to recover land along an ocean beach, evidence *held* to justify submission to the jury of the question of the location of ordinary high-water mark with respect to certain lots conveyed to defendant's grantor.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 283–291, 293; Dec. Dig. § 46.*]

2. ESTOPPEL (§ 22*)—BY DEED—MAPS REFERRED TO.

Where a map or plat of land is referred to in a deed as containing a description of the land, the map or plat may become in law a part of the deed, and the parties be estopped from denying the correctness of such portions of the map or plat as are involved in or essential to the description of the property.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 27–51; Dec. Dig. § 22.*]

3. ESTOPPEL (§ 22*)—BY DEED—MAP REFERRED TO.

A map referred to in a deed may serve as evidence of the location and surroundings of the property to be conveyed, without operating as an estoppel.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 27–51; Dec. Dig. § 22.*]

4. ESTOPPEL (§ 22*)—BY DEED—REFERENCE TO PLAT—HIGH-WATER MARK—
ESTOPPEL.

Where a deed of certain beach lands referred to a plat as showing the general location of the land but did not refer to certain curved lines thereon as indicating the lines of high and low water, the grantee and his successors in title were not estopped by the plat to claim that the lands conveyed extended to high-water mark, and were therefore riparian or littoral.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 27–51; Dec. Dig. § 22.*]

5. DEEDS (§ 119*)—SHORE LINES—MAP—QUESTION FOR JURY.

Where a deed to certain shore lands referred to a map containing curved lines apparently indicating the lines of high and low water, but no reference was made in the deed to such lines nor were they necessarily connected with the description of the premises conveyed, such lines could at most serve as presumptive, but rebuttable, evidence that at the time of the execution of the deeds the ordinary high-water mark of the ocean did not encroach on any of the lots described therein; what the lines indicated, and, if intended to show the lines of high and low water mark, how far they were reliable, being for the jury.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 342, 343; Dec. Dig. § 119.*]

6. ESTOPPEL (§ 32*)—BY DEED—EXTENT.

Where certain deeds described the land as beginning at an avenue and running back 130 feet to a 15-foot street, and the description, the habendum, and special warranty indicated an intention that the grantee should acquire from the grantor and hold the whole of the lots as described and specially warranted, the deeds, at most, operated to estop the grantee and his successors from claiming that the ordinary high-water mark

of the ocean encroached on any part of the lands described therein, and did not operate as an estoppel to bar them from claiming that the ocean at ordinary high tide touched the northwesterly side of the avenue in front of the lots, although not crossing the boundary line.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 81; Dec. Dig. § 32.*]

7. NAVIGABLE WATERS (§ 44*)—ACCRETION.

Where the ocean at ordinary high tide touched certain lots belonging to defendant along their entire front, it was immaterial on the question of defendant's right to land formed in front of the lots by accretion to what extent the ocean encroached upon the lots.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 266–278, 281, 282; Dec. Dig. § 44.*]

8. NEW TRIAL (§ 49*)—JURY—MISCONDUCT.

The fact that, after the rendition of a verdict in favor of defendant, he invited the jurymen or caused them to be invited to dine with him at a small supper partaken of openly in a public restaurant at an early hour of the evening, and without any drink stronger than tea or coffee, while blameworthy, did not constitute ground for a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 97–99; Dec. Dig. § 49.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Ejectment by the Beach Front Hotel Company against Richard R. Sooy. A judgment was rendered in favor of defendant, and plaintiff brings error. Affirmed.

Henry F. Stockwell, of Camden, N. J., and Gilbert Collins, of Jersey City, N. J. (Bleakly & Stockwell, of Camden, N. J., and Collins & Corbin, of Jersey City, N. J., on the brief), for plaintiff in error.

George A. Bourgeois, of Atlantic City, N. J., and Robert H. McCarter, of Newark, N. J. (Bourgeois & Coulomb of Atlantic City, N. J., and McCarter & English, of Newark, N. J., on the brief), for defendant in error.

Before GRAY, Circuit Judge, and BRADFORD and McPHERSON, District Judges.

BRADFORD, District Judge. This writ of error was taken to reverse a judgment rendered on the verdict of a jury for the defendant in an action of ejectment brought by the Beach Front Hotel Company, hereinafter referred to as the plaintiff, against Richard R. Sooy, hereinafter referred to as the defendant, to regain possession of a certain lot of ground in Ocean City, Cape May County and State of New Jersey. The lot is described as follows:

"Beginning at a point in the middle of Atlantic avenue, at the distance of two hundred (200) feet, southwestwardly from the southwesterly line of Sixth street; thence extending along the middle line of said Atlantic avenue southwestwardly, three hundred and thirty (330) feet to where the middle line of said Atlantic avenue intersects the middle line of Seventh street; thence southeastwardly, at right angles to Atlantic avenue, between parallel lines of that width, one of which said parallel lines runs along the middle line of Seventh street aforesaid, the distance of nine hundred (900) feet, more or less, to the high water mark of the Atlantic Ocean."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The territory included within the limits of Ocean City, formerly known as Peck's Beach, was acquired by the Ocean City Association, a corporation of New Jersey, in 1879 and 1880, under and by virtue of sundry deeds of conveyance and assurances. That association October 28, 1905, executed a deed to Reeves H. Isard purporting to convey to him in fee a tract of land including the premises in dispute, and thereafter on the same day Isard and his wife executed a deed to the Ocean City Hotel & Development Co., a corporation of New Jersey, bearing the same date and purporting to convey in fee to it the same lands and premises mentioned and described in the deed to Isard. Thereafter the Ocean City Hotel & Development Co. executed a deed bearing date November 13, 1909, purporting to convey in fee to the plaintiff the land in controversy. In all the above-mentioned deeds the lands therein described so far as embracing the premises in dispute were bounded on the northwest by the central line of Atlantic avenue and on the southeast by the Atlantic Ocean.

The defendant claims title to the premises in dispute as an accretion to certain other lands mediately acquired by him from the Ocean City Association, formed by the receding of the Atlantic Ocean. It appears from the record that William Lake, a surveyor, made May 22, 1880, a survey of Peck's Beach, known as the map of 1880, which was filed in the clerk's office of Cape May county June 9, 1880. In making his map Lake laid out the territory delineated on it in blocks and numbered lots, and streets and avenues. The Ocean City Association executed July 26, 1880, a deed to Charles Matthews, purporting to convey to him in fee lot No. 985 on the northwesterly side of Atlantic avenue between Sixth and Seventh streets, and executed September 4, 1882, another deed to Matthews purporting to convey to him in fee lots Nos. 987, 989, 991, 993 and 995, on the northwesterly side of Atlantic avenue between the above-mentioned streets. The above lands so conveyed to Matthews July 26, 1880, and September 4, 1882, were contiguous and directly behind the lands in dispute. They were described as beginning on the north-westerly side of Atlantic avenue, each lot being fifty feet wide and extending northwestwardly between lines parallel to Sixth street and along the northeasterly side of Seventh street one hundred and thirty feet to a fifteen feet wide street. Matthews executed April 10, 1883, a deed purporting to convey to the defendant in fee all the above six lots. Notwithstanding the fact that the conveyances from the Ocean City Association to Matthews and from Matthews to the defendant particularly described the lands as bounded by the northwesterly side of Atlantic avenue and running thence north-westwardly to the fifteen feet wide street, and referred in express terms to the filed map of the Ocean City Association, delineating the blocks, lots, streets and avenues therein called for, the defendant asserts that his title extends to lands beyond and eastwardly of the confines of Atlantic avenue, including the premises in dispute. To support this claim the defendant contends that at the time of the conveyance of lot No. 985 to Matthews July 26, 1880, the ordinary

high-water mark of the Atlantic Ocean extended across and cut off the front of that lot, thus making him a littoral or riparian proprietor, and further, that the ocean thereafter receded, uncovering land in front of that lot, the title to which land gained by accretion vested in the defendant as grantee of Matthews. A similar contention is made by the defendant with respect to lands gained by accretion in front of the remaining lots Nos. 987, 989, 991, 993 and 995.

[1, 2] While the assignments present many alleged errors, the central and controlling point in the case is whether the court below was or was not justified by the evidence in leaving to the jury the determination of the question of the location of ordinary high-water mark of the ocean with respect to the lots mentioned in the deeds to Matthews. Evidence was admitted on the part of the defendant tending to show that the ordinary high-water mark of the ocean, many years before the execution by the Ocean City Association of the deed of October 28, 1905, to Isard under which the plaintiff mediately claims title to the lands in controversy, and at and after the execution by that association of the deeds of July 26, 1880, and September 4, 1882, to Matthews for the six above-mentioned lots on the northwesterly side of Atlantic avenue, crossed all of those lots. If such was the fact, Matthews as a riparian owner acquired by accretion the premises in question and the defendant subsequently succeeded to his rights, to the exclusion of any and all claim asserted by the plaintiff. But it is contended on the part of the latter that the plaintiff, having shown a proper paper title to the premises in question, the defendant was estopped by the map of 1880, expressly referred to in the deeds to Matthews, from showing that he was a riparian proprietor. Each of the two deeds describe by number and location with respect to Atlantic avenue and Sixth street the lots purporting to be conveyed as delineated in "Section A on the plan of lots of the said Ocean City Association," and there are on the copy of the plan in evidence two curved lines which may or may not represent the belt of the ocean beach between high and low water mark, as it existed when the map was made and the deeds executed by the Ocean City Association to Matthews. But there is no designation on the map of the nature of these curved lines nor any statement of what they were intended to indicate. The plaintiff urges with much stress that, the deeds to Matthews having referred to the map of 1880 as showing the location of the lands purporting to be conveyed thereby, that map was adopted by and became part of the deeds, and that the defendant as grantee of Matthews is estopped from claiming that at the time of their execution he was a riparian proprietor. Undoubtedly a map or plat may become in law a part of a deed when referred to therein as containing a correct description of the property to be conveyed, and the parties may be estopped from denying the correctness of such portions of the contents of the map as are involved in or essential to the description of such property. In Jefferis v. East Omaha Land Co., 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 872, the court said:

"It is a familiar rule of law, that, where a plat is referred to in a deed as containing a description of land, the courses, distances, and other particulars appearing upon the plat are to be as much regarded, in ascertaining the true description of the land and the intent of the parties, as if they had been expressly enumerated in the deed."

[3-6] So a map referred to in a deed may serve as evidence of the location and surroundings of the property to be conveyed, without operating as an estoppel. In the present case an estoppel is claimed by the plaintiff on the ground that the curved lines on the map of 1880, apparently indicating the lines of high and low water, conclusively establish as against the defendant that Matthews under whom he claims did not become a riparian proprietor by virtue of the deeds of July 26, 1880, and September 4, 1882. But no reference is made in the deeds to such curved lines nor are they necessarily connected with the description of the premises conveyed. Such lines could at most serve as presumptive, but rebuttable, evidence that at the time of the execution of those deeds the ordinary high-water mark of the ocean did not encroach upon any of the six lots described therein. What the curved lines indicated, and, if intended to show the lines of high and low water mark, how far they were reliable, were matters for the jury. And such we understand to be the doctrine which has been judicially applied in New Jersey with respect to the curved lines in question. Ocean City Hotel Co. v. Sooy, 77 N. J. Law, 527, 73 Atl. 236. In the above case the Court of Errors and Appeals while holding that the map and deeds to Matthews were evidence as to the location of the high-water mark of the ocean relative to the lands described in those deeds, held that they were not conclusive as to such location. An estoppel is also claimed by the plaintiff on the ground that the description in the deeds to Matthews negatives all idea that the ordinary high-water mark encroached upon any of the six lots mentioned therein. It is true that, in those deeds the lots are described as beginning on the northwesterly side of Atlantic avenue and running back one hundred and thirty feet to a fifteen-feet wide street. Here was a specific point of beginning and a specific depth of lot. And each of the deeds purported to confer upon Matthews as party of the second part the right—

"to have and to hold the said lots or pieces of ground * * * unto the said party of the second part, his heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, his heirs and assigns forever."

And each of the deeds contained a special warranty as follows:

"And the said Ocean City Association for themselves, and their successors do by these presents covenant, grant and agree to and with the said party of the second part, his heirs and assigns, that they, the said Ocean City Association and their successors, all and singular, the hereditaments and premises hereinabove described and granted, or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, his heirs and assigns, against them, the said Ocean City Association, and their successors and against all and every other person or persons whomsoever lawfully claiming or to claim the same, or any part thereof, by, from or un-

der them or any of them, shall and will, subject as aforesaid, warrant and forever defend."

[7] It thus appears by the description, the habendum and the special warranty that it was the intention and understanding of the parties that Matthews should acquire from the Ocean City Association and hold not only a part but the whole of the lots as described and specially warranted. The provisions of the deeds seem inconsistent with the idea that at the time of their execution the ordinary high-water mark encroached upon the lots or any of them. In New Jersey the general rule is well settled by judicial decisions that private riparian ownership does not extend beyond ordinary high-water mark of the ocean, and that the beach beyond that mark is owned by the state, and consequently in the absence of a grant by the state is not the subject of private ownership by riparian proprietors. If, however, it be assumed that the contents of the deeds were such as to estop Matthews and the defendant as his grantee from claiming that the ordinary high-water mark crossed any portion of the land described therein, that necessarily would be the full extent of the estoppel; for the extreme southeasterly boundary was the northwesterly side of Atlantic avenue. Under the circumstances no estoppel could operate to bar Matthews or the defendant from claiming that the ocean at ordinary high tide touched the northwesterly side of Atlantic avenue along the front of all the lots although not crossing that boundary line. And if it did so touch that line Matthews, to whose rights the defendant has succeeded, was a riparian proprietor, and as such entitled to the premises in dispute as an accretion, and the defendant was entitled to show that the ocean at ordinary high tide extended to the northwesterly side of Atlantic avenue although the evidence might incidentally show that the ocean at such a tide substantially encroached upon the lots. If the ocean at ordinary high tide touched the lots along their entire front it is wholly immaterial on the question of accretion to what extent it encroached upon them. Thus the doctrine of estoppel, if from the description, the habendum and the special warranty it has any application to this case, could not operate to the prejudice of the defendant or enure to the benefit of the plaintiff. In Ocean City Association v. Sooy, 77 N. J. Law, 527, 73 Atl. 236, the court said:

"It is obvious that the mere fact that a street is referred to as a boundary and is delineated upon a map indicates nothing as to the title to the land covered by the street, for the title to the street might well be in a third party, and yet the street properly be delineated upon a map and referred to in a conveyance between other parties. * * * The estoppel does not go as far as claimed by the plaintiff in error, and it was doubtless for this reason that this court in a similar case arising out of this very map, did not consider the fact that a lot was bounded upon a street as conclusive upon the question whether or not the line of high water reached the lot as described by metes and bounds."

The cases relied upon by the plaintiff in support of its contention that an estoppel exists against the defendant by reason of the reference in the deeds to Matthews to the map of 1880 are different in their facts and principles from and have no application to this case,

Evidence was admitted touching the preparation of the map, its reliability, and the physical location of the lots conveyed to Matthews in their relation to the line of ordinary high water. And the jury was instructed that the map was evidence and its weight was for their determination, regard being had not only to delineations thereon but the testimony relating to the manner and circumstances under which it was made. The court below pointedly said to the jury:

"In the settlement of this controversy, the first question for your determination will be whether the line of ordinary high tide 'at the times the Ocean City Association conveyed to Matthews, at the dates mentioned in 1880 and 1882, was on the lots then conveyed to him. That is, whether it covered not only the whole of the lands within the lines of Atlantic avenue, if extended, but actually washed to or on the Matthews lots themselves, and all of them. If it did, the defendant is entitled to a verdict of not guilty of the trespass and ejectment laid to its charge; and if it did not, the plaintiff is entitled to a verdict that the defendant is guilty of the trespass and ejectment laid to its charge. * * * I shall not attempt to deal with the facts in detail in this case. Their determination, and the credibility of the witnesses, rests solely with you, and you should deal with that subject-matter as intelligently and carefully as you possibly can. * * * I ought to say, however, that maps which have been made for the purpose of this or any previous trial of the issue now presented are not evidence; they are merely illustrative and serve to clarify the testimony of the witnesses. What has just been said, however, does not relate to the filed maps of the Ocean City Association or to the Matthews survey. These are evidences of a high character, not only because they were made by a prior owner through whom, in effect, both parties claim, but the Matthews deeds specifically refer to them, that is to the Ocean City Association maps. You will, therefore, carefully study these maps and the evidence relating to them, bearing in mind they were made before this controversy arose. They apparently show land in front, unplotted land. Does that mean, gentlemen, land flowed by the high water, ordinary line of high tide, or not? You will consider that map in connection with Mr. Lake's testimony, the man who made it, and in doing so, while you consider whether there is unplotted ground there, you will also consider what he said with relation to some wavy lines placed on the map, in which, if I recall the substance of the testimony, the line indicating the ocean line had no significance other than it was intended to indicate that the ocean lay in that direction, that is, eastwardly of the lots."

[8] The above-quoted portion of the charge dealing with the most vital point in the case certainly could not afford the plaintiff any reasonable ground of complaint. There are forty-five assignments of error which need not be considered seriatim or in detail. The forty-fourth assignment is mainly to the effect that the court below erred and committed an abuse of judicial discretion in dismissing the application of the plaintiff for a new trial made on the ground that after the rendering of the verdict the defendant invited or caused to be invited the jurymen to dine with him, which they did, the defendant paying for the dinner. With respect to this incident the court below in denying the application used the following language which meets with our entire approval:

"But notwithstanding the blameworthy character of the conduct in question, it is impossible to see how or why it corrupts or taints the verdict. There is not the slightest evidence or suggestion of pre-arrangement or concealment about the matter. The invitation and its acceptance, so far as appears, were absolutely spontaneous. It is not in character unlike the conduct of a defendant, who, upon the announcement of a verdict of acquittal, rushes

forward, shakes hands with and thanks the jurors. The supper was a simple affair, partaken of openly in a public restaurant, at an early hour in the evening and without any drink stronger than tea or coffee."

The first assignment dealing with the question of estoppel, the weight of the evidence, etc., has been sufficiently covered by what has hereinabove been said. We deem it unnecessary to discuss any of the remaining assignments, as we are satisfied that whatever error they may set forth is not of a character to require or justify a reversal of the judgment below. For the reasons given the judgment below is affirmed with costs.