JOHN F. RICHARDS, Respondent, v. FERGUSON IMPLEMENT COMPANY, Appellant.

Kansas City Court of Appeals, May 20, 1907.

1. **RAILROADS: Spurs: Discrimination: Toll to Landowners.** A railroad company cannot contract with a landowner to lay a public switch over his land on condition that he be allowed to exact toll from shippers served by such switch, since the railroad must so acquire its rights that it can impartially serve all of its customers.

2. ————: **Private Spur: Toll to Landowners: Consideration.** R secured a railroad to set in a spur on the end of his lot to accommodate a wholesale concern operating thereon. The spur was built from the public switch on the edge of a public street

to the west side of R's property. Later on lotowners to the east by paying R rent for their goods passing over his lot, secured the railroad to extend the switch across the ends of their lots to accommodate their business. Finally one of these eastern lotowners refused to pay his rent on the ground that his contract was without consideration since the railroad as a common carrier was bound to handle his freight on the same terms as that of other patrons. *Held*, the spur was not public property and did not belong to the railroad and the eastern lotowners had no right to compel the extension of the spur as a public way, and the agreement did not change the character of the spur nor give the railroads any other easements than those specifically granted and was not without consideration nor against public policy.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

AFFIRMED.

*Harkless, Crysler & Histed* for appellant.

(1) A private individual cannot grant a license to a railroad to construct a track over his land and be permitted to charge shippers for the privilege of allowing cars to be transported over the track on his land. (2) Railroad companies may take land by grant, easement, license or condemnation or otherwise, but it must be taken and used solely and only for public purposes. R. S 1899, secs. 1035, 1054. (3) Railroad companies must give uniform rates and privileges to all parties in operating their railroads. R. S. 1899, secs. 1126, 1127, 1128, 1129, 1130, 1133. (4) Railroad rails, ties, etc., laid down upon land become fixtures, and the railroad's property, and become a part of the easement and right of the railroad company. Railroad v. Bradbury, 106 Mo. App. 456. (5) When Richards & Company gave the easement and privilege to the railroad to lay its track over its land, the road became as permanently dedicated to the public use as if the railroad had taken it by condemnation, and no private arrangement or con-

tract between the railroad and Richards & Company can in any way, affect the right of the public to the use of the railroad track, nor can Richards & Company deprive the public of the right to use it as others use it by any contract with the railroad. If a railroad company cannot be permitted to discriminate against shippers, they cannot do it indirectly by tolling out to somebody over whose land their road runs the right to charge other shippers for passing over such party's land. Railroad v. Coal Co., 55 L. R. A. 601; Bedford v. Oman, 24 Ky. Law, 2274, 73 S. W. 1038; McGrew v. Railway Co., 177 Mo. 533.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) If the case of Railroad v. Bradbury, 106 Mo. App. 455, cited by appellant, has any application whatever to the issue in this case, it is an authority supporting respondent's judgment. (2) In this case, the Union Pacific never had any easement in respondent's ground and respondent owned the track himself. (3) Even if there had been an entry upon respondent's property without his consent, the doctrine of public interest could not be invoked to deprive him of the right to ejectment or trespass. Childs v. Railway, 117 Mo. 414. This decision is a complete answer to appellant's contention in regard to the doctrine of public interest. R. S. 1899, sec. 1264. Dickey v. Tennison, 27 Mo. 373; Seafield v. Bohue, 169 Mo. 537; In re Twenty-first Street, 96 S. W. 201 (Mo.) 205; Sherlock v. Railway, 142 Mo. 183.

JOHNSON, J.—Action on an account for rent begun before a justice of the peace. A jury was waived in the circuit court where the cause was taken on appeal and the trial resulted in a judgment in favor of plaintiff for the full amount prayed. There is no controversy

over the facts and we are asked to reverse the judgment on the ground that they afford no cause of action in favor of plaintiff.

There are two items in the account filed, as follows:

"To rental—use of railroad track and land across the rear of lots 1, 2, 3, and 4 in block 44, in Turner & Company's addition, for building known and numbered as numbers 1317 and 1319 Union avenue, in Kansas City, Missouri, at $7.00 per month, for 1903.... $84.00
To rental—use of same track and land January

1st, 1904 to October 20, 1904, at same rate.. 65.60
                                                _____
                                                $149.60"

For a number of years, plaintiff has been the owner of the lots described in the account. They are located on Union avenue to the east of Hickory street in Kansas City and are in the business district of the "West Bottoms." A public alley running east and west adjoins them on the south and the Union Pacific Railroad company has maintained a public switch therein during the whole period covered by our inquiry. In 1879, the railroad company, under an agreement with plaintiff, ran a spur from this switch to and across the south end of plaintiff's lots for the purpose of affording private switching facilities to a wholesale business establishment there maintained. The junction of the spur with the public switch was placed at a point some distance west of Hickory street, and it was necessary to traverse land owned by the Missouri Pacific Railway Company and also Hickory street in order to reach the west line of plaintiff's property. An arrangement was made by which a right of way was obtained over the private land and plaintiff procured the passage of a city ordinance giving him permission to lay the track across the street. The cost of the construction of the track to plaintiff's land was borne by the Union Pacific Railroad Company, but plaintiff paid for the track across his land.

Afterwards the owner of lot 5, which adjoins the land of plaintiff on the east, desired to have the spur extended across the rear end of his lot for the accommodation of a wholesale business conducted thereon, and it was so extended under an agreement by which he obligated himself to pay plaintiff a monthly rental of ten dollars for the right to have his freight transferred over plaintiff's land. Sometime after this, the owner of lot 6, which adjoins lot 5 on the east, obtained an extension of the track across the rear end of his lot, under an agreement made with plaintiff and the railroad company, and acquiesced in by the owner of lot 5, by the terms of which, he agreed to pay plaintiff a monthly rental of seven dollars, and the rental to the owner of lot 5, was then reduced to the same amount. After that, defendant, the owner of lot 7, which adjoins lot 6 on the east, made a contract with plaintiff and also one with the railroad company for the extension of the line across the rear end of its lot, for the service of the wholesale business which it was operating thereon. Under the terms of the contract, defendant obligated itself to pay plaintiff a rental of seven dollars per month as long as the switch was maintained for its accommodation, and pursuant thereto, paid plaintiff the amount of the rental for a number of years and until the beginning of 1903. At the end of that year, it refused to continue the payment, and after ineffectual attempts to come to a settlement, plaintiff brought this action. It appears that defendant could have used the public switch in the alley, but the private switch afforded better facilities for the handling of its freight.

The argument of defendant is that its agreement to pay tribute to plaintiff for the privilege of having its freight cross his land was without any consideration to support it for the reason that the railroad company had acquired an easement over his land, and, as a common carrier engaged in the operation of a switch as a

part of its railway system, was bound, under the law, to handle defendant's freight on the same terms enjoyed by the most favored patron along the line. In other words, the carrier could not, in any manner, or under any guise, discriminate against defendant in favor of plaintiff, and that to permit plaintiff to collect a so-called rental would be nothing less than the imposition of higher rates for the handling of its freight than those enjoyed by plaintiff.

This argument would be sound if applied to the duty of the carrier with respect to the operation of one of its own switching tracks. Invested with the right of eminent domain, it had the right to condemn private property for the purpose of laying and maintaining public switches, and the law charged it with the duty of providing adequate facilities for the handling of the business it had reason to anticipate would be transacted at the various stations on its line. It could not discharge this duty in the acquisition of a right of way for the laying of a public switch over private land under a contract with the owner which reserved to the latter a right to exact toll from the shippers to be served. As was aptly said by the court of appeals of Kentucky in Railroad v. Coal Co., 55 L. R. A. 601: "They (railroad companies) have no right to contract with a corporation or individual to give exclusive rights to transfer any commodity from any part of their line. Appellants have by their charter a power of condemnation for right of way both for their main and switch tracks, and their obligations to the general public forbid that they should acquire such rights of way under such circumstances and conditions as render it impossible for them to impartially serve all their customers. In our opinion, the contract with the Campbell Creek Coal Company giving them exclusive use of the switch for coal purposes was against public policy and absolutely void. The

125 App—28

railroad company could not, for the purpose of saving the expense of condemnation proceedings, make such contract." In the present case, had plaintiff granted to the railroad company an easement over his land for a public switch, we would have no hesitancy in saying that any agreement by which he attempted to exact tribute from the shippers along the line, would be void as against public policy.

But are we dealing with the subject of an easement given by plaintiff for the uses of a public switch? True, the railroad company operates the track in the same manner that it does other portions of its system, and this fact affords one of the tests to be applied in determining the character of the track. But by no means is it to be taken as the final criterion. In ascertaining whether the switch should be regarded as an integral part of the railroad company's property or as an appurtenance to private land, the final question is not, who uses it, but who has the right to use it. [Brown v. Railway Co., 137 Mo. 529.] Unquestionably, when the switch was first laid, the railroad company acquired no easement of any kind over the land of plaintiff. It had the right to switch in and out cars loaded with plaintiff's freight, but this was a service solely for the benefit of plaintiff and in no sense was a privilege or benefit bestowed upon the company. The latter had neither bargained for nor condemned a right of way over plaintiff's land. Certainly no one will be hardy enough to contend that had the railroad company attempted to extend the switch across lot 5 against the wishes of plaintiff, it could not have been successfully enjoined from thus asserting an easement it had never acquired. We are not overlooking the fact that the railroad company traversed private property and a public street in bringing the spur to plaintiff's property line, and are not intimating that the act of the city government in granting to plaintiff a right of way for a private road over the

street was *intra vires*. But we are holding that the switch when built became a private way, and that part of it located on plaintiff's land was not railroad property, and therefore, was not for public use. The owners of property lying east of that belonging to plaintiff had no right to compel the extension of this particular line as a public switch, and we fail to perceive any principle by which the railroad company could have acquired a right to extend it, and thus to receive compensation for the use of plaintiff's property without his consent and without a judicial proceeding of condemnation. [Bedford Bowling Green Stone Co. v. Oman, 134 Fed. 441; same case, 134 Fed. 64.] Being a private way, the agreements by which plaintiff suffered his immediate neighbors to enjoy its use on terms which recognized his rights of ownership did not serve to change its character nor to give to the railroad company any other easement than that specifically granted. It never was in the contemplation of any of the parties that the track should be converted into a public switch, and the fact that it was open to the use of four private business enterprises instead of one, did not stamp upon it the characteristics of public service. In this view of the case, defendant received a *quid pro quo* for his agreement to pay rental and the contract he made with plaintiff cannot be regarded as one against public policy, and therefore, is not void for lack of consideration.

The judgment is affirmed. All concur.