## J. F. RICHARDS v. PUBLIC SERVICE COMMISSION OF MISSOURI, Appellant.

### Division One, April 8, 1922.

1. **RAILROADS: Switchtrack Over Private Property: Public Highway.**
   Where the owner of lots abutting on a public street and a public alley in a city was granted, by such city, upon his petition therefor, the right to lay down, operate and maintain or cause to be laid down, operated and maintained a railroad switchtrack across such street and alley and also across his said lots "for the purpose of receiving and discharging from and loading and shipping on railroad cars, goods, wares and other merchandise," and such switchtrack was accordingly constructed and used and subsequently was extended across adjacent lots and used to serve industries located thereon, such switchtrack was a public highway, subject to public rights and public control.

293 Mo.—40

2. ———: ———: ———: Dedication to Public Use. The acts of such owner, in petitioning for and obtaining such grant, clearly implied that the switchtrack, so to be built, operated and maintained, was for the use of the public, because both he and the city council knew that the latter had no power to grant the right to lay the track across the highways of the city, unless it was to be used for the benefit of the public, and such acts constituted a dedication to public use of a right of way therefore over his private property, notwithstanding such track was constructed primarily to serve his own industry.

3. ———: ———: ———: ———: State Control. The State, through its Public Service Commission, had the right to exercise control over such switchtrack as an integral part of the railroad with which it was connected and as one of the public highways of the State, and to require the railroad company to operate the whole thereof, and to switch and handle cars thereover for the use of all the owners or occupants of the lots over which the same passed, without discrimination between them or any of them for like service and at its regular tariff rates, notwithstanding the fact that the owners of the lots over which such switchtrack had been extended had for years paid a rental to the original grantee of the right to build the same for the use thereof in connection with their lots and such grantee had forbidden the railroad company to serve such other lot owners without the continued payment of such rental.

Appeal from Jackson Circuit Court.—*Hon. Thad B. Landon*, Judge.

REVERSED.

*R. P. Spencer* and *James D. Lindsay* for appellant; *Roland Hughes*, of counsel.

(1) The railroad switch track involved in this case, constructed under grant of public authority, and operated and maintained by a common carrier, is a "railroad" within the provisions of Sec. 14, Art. XII, Mo. Constitution. Dietrich v. Murdock, 42 Mo. 279; Brown v. Ry. Co., 137 Mo. 529; Union Line Co. v. Railway, 233 U. S. 211-222; Railroad Co. v. Coal Co., 161 Mo. 288. And within the provisions of the Public Service Commission Law; Subdiv. 6 and 8, Sec. 10411 and Sec. 10425, R. S. 1919. That part of the track to be constructed over the

lots of respondent was an integral part of the whole track, under the terms of the ordinance permitting the crossing of Hickory Street, whereby other uses than those for respondent Richards were authorized and imposed. Hairston v. Railway, 208 U. S. 598. (2) Acceptance and continued enjoyment of the grant to construct and operate a switch railroad track across a public alley, and across a public street along a designated line, to a designated point, is conclusive evidence of a devotion of the property thus constructed and operated to a public use. The city could not make the grant for a private use. Glaessner v. Brew. Assn., 100 Mo. 508; Cummings v. St. Louis, 90 Mo. 263; Schopp v. St. Louis, 117 Mo. 133; Lockwood v. Ry. Co., 122 Mo. 86; Belcher Sugar Co. v. Elev. Co., 82 Mo. 124; State ex inf. Jones v. Light & Dev. Co., 246 Mo. 640; Brown v. Ry. Co., 137 Mo. 529; State ex rel. v. St. Ry. Co., 140 Mo. 539; 13 R. C. L. sec. 172, p. 202; Sherlock v. Ry. Co., 142 Mo. 172. (3) The construction and operation of a railroad or of a switch railroad track for the shipment of cars of goods, wares and merchandise into the commerce of the country, under an authority granted by the State, whether through exercise of the right of eminent domain, or by a grant of cetrain rights in public highways or streets not directly enjoyed by others, affects the property thus employed with a public interest, and subjects its use to regulation by the State. Coal Ry. Co. v. Coal & Mining Co., 161 Mo. 288; Lime Co. v. Ry. Co., 233 U. S. 222; State ex rel. v. St. Louis, 145 Mo. 574, 576; Lime Co. v. Railroad Comm., 144 Wis. 523; Ry. Co. v. Lime Co., 152 Wis. 633. (4) The grant expressed in the ordinance constitutes a franchise, which, although given by Kansas City, is in reality a grant from the State, evidenced by the act of the city, as a subordinate governmental agency of the State. Kavanaugh v. St. Louis, 220 Mo. 511; State ex. inf. v. Light & Dev. Co., 246 Mo. 649; Transportation Co. v. Chicago, 99 U. S. 640, 641. The power of the State to regulte the exercise of a right which can not come into being, or the enjoyment of a use which can not exist, unless founded upon a public interest in the right and

use, and without an appropriate grant of authority by the State, can not be denied. (5) The power of the State to regulate a use of property, which can not exist or be enjoyed except through privilege granted by the State, can not be controlled by contracts, wholly between the interested private parties, or by their conduct in respect of the use. State ex rel. v. Public Serv. Comm., 271 Mo. 270; State ex rel. v. Commission, 272 Mo. 645; Tobacco Co. v. St. Louis, 247 Mo. 374; Railway v. Duluth, 208 U. S. 583; Railway v. Minneapolis, 232 U. S. 430. (6) The ordinance granting the right to construct and operate the switch railroad track was a purely governmental act of the State, accomplished by its subordinate agency, the city. The right of regulation of the use of the track remained with the State, and was not lost by the acts of private parties interested, nor waived by failure for a time to exercise the police power of the State over the subject of the use. Sec. 5, Art. XII, Mo. Constitution; State ex. inf. v. Light & Dev. Co., 246 Mo. 650. (7) The terms of apportionment between parties interested of the expense of constructing the track, under authority to construct across the street, and beyond, was and is a matter collateral, and distinguished from the regulation of the use and operation of the track, after it was constructed. The question of condemnation of property, or the taking of property without compensation does not arise in this proceeding, either directly or in a derivative way from the action of the Commission. The rights of the parties, if any, arising out of their respective contributions for the construction of the track, is a judicial question, independent of, and not controlling, the regulation of the use of the property, as part of the system of a common carrier. (8) "The Commission's supervision is not limited to lines constructed by a railroad company nor to those owned by it; it is expressly extended to 'lines and property owned, leased, controlled or operated' by such company." Ry. Co. v. Public Serv. Comm., 279 Mo. 490; Secs. 10411 (Sub. 6 and 8), 10425 (Sub. 1 and 3), 10435, 10436, 10437, 10433, 10452, 10458, R. S. 1919; Olcott v. Supervisors, 16 Wall. (U. S.) 695.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1)   The order of the Commission violates constitutional provisions.   (a)   Private property cannot be taken for public use without compensation.   U. S. Constitution, 14th Amendment, sec. 1; Mo. Constitution, art. 2 secs. 20 and 21.   (b)   Neither the State nor its creature, the Public Service Commission, can make a law or ruling impairing the obligation of contract.   U. S. Constitution, art. 1, sec. 10; State v. Wood, 143 Mo. App. 316; Carpenter v. St. Joseph, 263 Mo. 714.   (2)   The power of eminent domain is not given to the Public Service Commission. Murphy v. Missouri Pacific, 2 Pub. Serv. Comm., Rep. 471; Landau Cabinet Co. v. Bush, 3 Pub. Serv. Comm. Rep. 476.   (3)   Before the Commission could acquire jurisdiction, public convenience and necessity must be shown.   Smith v. Chicago, Burlington & Quincy, 5 Pub. Serv. Comm. Rep. 124; Mound City Mill Co. v. Chicago, Burlington & Quincy, 5 Pub. Serv. Comm. Rep. 278.   (4)   This private track is not a railroad.   Laws 1911, p. 161; Laws 1913, p. 577, sec. 6.   (5)   The question involved in the order of the Commission has already been judicially determined.   Richards v. Ferguson Imp. Co., 125 Mo. App. 428; State v. Pub. Serv. Comm., 259 Mo. 727; Lusk v. Atkinson, 268 Mo. 116; Atchison, Topeka & Santa Fe v. Pub. Serv. Comm., 192 S. W. 462.

RAGLAND, C.—This is an appeal from a judgment of the Circuit Court of Jackson County, setting aside and annulling an order of the Public Service Commission requiring the Union Pacific Railroad Company to operate the whole of a certain switch track in Kansas City, for the use of all the owners of lots over which it passes without discrimination between them.

The switch track in question begins at the point of its connection with a side track of the Union Pacific Railroad Company on or near the west line of lot 25 in block 45 of Turner's Addition to Kansas City, extends thence northeasterly across the alley in said block, and thence eastwardily paralleling the alley and crossing Hickory Street and the south ends of lots 1, 2, 3, 4, 5, 6, 7 and 8

in block 44 of said addition, terminating at the east side of said lot 8.

In the year 1878 and since that time the buildings upon the lots in Turner's Addition, including those on the lots last referred to, were, and have been, used and occupied as warehouses, or in connection with wholesale mercantile businesses. During all that time J. F. Richards has been the owner of said lots 1, 2, 3 and 4. In response to his petition asking the right of way for a railroad track the Common Council of Kansas City, on December 13, 1878, duly enacted the following ordinance:

"Section 1. That J. F. Richards & Company, their successors and assigns, be and they are hereby authorized and empowered to lay down, operate and maintain or cause to be laid down, operated and maintained a switch railroad track from a point, and connecting with, the sidetrack of the Kansas Pacific Railway Company, south of the alley in Block Forty-five in Turner and Company's Addition to the City of Kansas, Missouri, thence over and across said alley in rear of lots 22 and 23 in said Block Forty-five; thence over and across Hickory Street, the south rail being three feet north of the north line of said alley to the south ends of Lots 1, 2, 3, 4, Block 44, in said Turner & Company's Addition, for the purpose of receiving and discharging from and loading and shipping on railroad cars, goods, wares and other merchandise.

"Section 2. That the authority granted in Section one of this ordinance is, however, on condition that the said J. E. Richards & Company, their successors and assigns, shall construct or cause to be constructed and kept in repair the said switch railroad track where the same crosses said alley or Hickory Street on a level with the established grade of said alley and Hickory Street, and construct and keep the space between the rails and the space of two feet on the outside of the rails planked with white or burr oak planks two and one-half inches thick, and such planks should be thoroughly spiked to the cross ties and so placed as to make a connected and

safe crossing from two feet outside of the rails on one side of said railroad track to two feet on the other side of said track, and shall extend clear across said alley and street and including the sidewalks of said street. "

"Section 3. That no cars shall remain on said switch railroad track where the same crosses said street and alley any longer than ten minutes at any time, and the use of said street and alley by the public where said switch railroad track crosses the same shall be impeded or interfered with as little as possible by the operation of said switch railroad track."

Immediately upon the passage and approval of the ordinance, the predecessor of the Union Pacific Railroad Company, pursuant to some arrangement with J. F. Richards & Company, constructed the switch track in question from the point of its connection with the company's side track to the east line of lot 4. Whether Richards bore all the expense of the construction, or whether he paid only for extending the track across his lots, is left in doubt by the evidence. But in any event he now claims only that part of the track that is on his premises, while the railroad company claims all that is west thereof. Soon after the original construction of the track it was extended by the railroad company across lots 5, 6, 7 and 8, presumably at the expense of the owners of those lots, who had previously agreed with Richards to pay him a rental for the use of the part of the track that was on his lots.

Ever since its construction the whole switch track has been operated and maintained by the railroad company in connection with its switch yards and as one of its industrial tracks. It has, so far as it is concerned, served the owners or occupants of lots 1, 2, 3, 4, 5, 6, 7 and 8 alike, in setting cars on their respective premises for loading and unloading. In rendering this service, the company, with reference to the charges made therefor under its schedule of tariffs, has at all times treated the switch track in question as a part of its terminal system at Kansas City.

From the time of the extension of the track across the ends of lots 5, 6, 7 and 8 down to about 1904, the owners of those lots paid Richards a stipulated sum per month, or per car, according to their several agreements with him, for the privilege of having cars moved over that part of the track that was on his premises. On or about the date last named the Ferguson Implement Company, óne of such owners, refused to make further payments, and Richards instituted suit against it for rents alleged to be due him. A judgment in Richards' favor was affirmed by the Kansas City Court of Appeals. [Richards v. Implement Co., 125 Mo. App. 428.] Thereafter the Implement Company and the other lot owners continued to pay Richards for the privilege of having cars switched across his lots until the early part of 1919. At that time a cotroversy arose respecting the payments, and Richards notified the railroad company not to switch any more cars for any of them over the track on his premises. Thereupon the company advised the other lot owners that the switching service would have to be discontinued until they had come to an agreement with Richards.

On April 14, 1919, Sarah G. Neff, the representatives of the J. C. Gates Estate and George E. Bowling, the then owners respectively of lots 5, 6, 7 and 8, petitioned the Public Service Commission for an order requiring the railroad company to continue the switching service as theretofore rendered by it. The railroad company and Richards were made parties to the proceeding and a hearing was had before the Commission at Kansas City, November 4, 1919. After hearing the evidence offered by the respective parties, the Commission ordered:

"That the Union Pacific Railroad Company is hereby directed and required to operate the whole of the switch railroad track described in the application, and to switch and handle cars thereover for the use of all the owners or occupants of the lots over which said switch track passes, without discrimination between

them or any of them for like service, and at its regular tariff rates.''

Richards sued out a writ of *certiorari*, and on a review of the proceedings had before the Commission thereunder, the Circuit Court of Jackson County, on March 5, 1921, gave judgment setting aside and annulling the order heretofore set out. From that judgment the Commission prosecutes this appeal.

I.  This controversy is between the State as represented by the Public Service Commission and the respondent Richards.  The former asserts that the whole of the switch track in question is a railroad, or the integral part of a railroad, operated for public use, and as such is within its supervision.  The latter contends that the part of the track that is on his lots is his private property and, consequently, not subject to the regulatory powers of the State.  The Union Pacific Railroad Company stands indifferent; it is ready and willing to comply with the order of the Commission, if it may do so lawfully, that is, without violating the rights of Richards.  The controversy, therefore, turns upon the question, whether the portion of Richards' lots occupied by the switch track has been appropriated by any constitutional method to public use as a railroad right of way.  The Public Service Commission could not by its order, of course, subject Richards' land to a public use; he himself has never formally dedicated or conveyed it to any such use; nor has it been taken therefor under the power of eminent domain. If, then the railroad company as a common carrier has a right of way over his property, it is because of an implied dedication on his part.  Was there such a dedication?  That in the final analysis is the only question involved in the case.

It is said: the intention of the owner to set apart his lands for the use of the public is the foundation and life of every dedication, and only when this intention is unequivocably manifested can a dedication be found to exist.  The acts or declarations of the owner relied on to

*Switch Track: Public Highway: Dedication.*

establish it must be convincing and unequivocal, indicating, expressly or by plain implication, a purpose to create a right in the public to use the land adversely to himself. [Morrison v. Marquardt, 24 Iowa, 35.] Such purpose, however, is to be gathered from the open and visible conduct of the owner, and it sometimes happens that his acts and declaration clearly evince an intention to dedicate lands to a public use when in fact he has no real intention of doing so. In such case if individuals and the public act upon the owner's intention as so manifested, he is precluded from resuming his right of private property over the land, if his so doing would operate as a fraud upon them. For example: If the owner of land makes a street opening into ancient streets at both ends, and builds a double row of houses, and sells or rents the houses, this is instantly a street or highway. [Woodyer v. Hadden, 5 Taunt. 125.] So, if the owner of a tract of land lays it off into streets and a public square and lots, and sells the lots, this is forthwith a dedication of the streets and square. [Cincinnati v. White, 6 Peters, 431; New Orleans v. United States, 10 Peters, 662.] It is ancient doctrine that a common law dedication does not operate as a grant, but by way estoppel *in pais*. [Prescott v. Edwards, 117 Cal. 298.]

Richards in his petition to the Common Council of Kansas City represented that it was his purpose to lay down, operate and maintain, or cause to be laid down, operated and maintained, a switch railroad track from the railroad siding of the Kansas Pacific Railway Company to the east side of his lot 4, "for the purpose of receiving and discharging from and loading and shipping on railroad cars, goods, wares and other merchandise," and asked for a grant of the right of way for such track across two of the city's public thoroughfares. By clear implication he further represented that the switch-track so to be built, operated and maintained, was for the use of the public, because both he and the Common Council knew that the latter had no power to grant the right to lay the track across the highways of the city, unless it was to be used for the benefit of the public. [State ex

inf. v. Light & Dev. Co., 246 Mo. 618, 640; Glaessner v. Brewing Assn., 100 Mo. 508.] In other words, the procurement and acceptance by respondent of a grant from the public to lay down, operate and maintain a switch railroad track across public highways and along a designated line, was tantamount to a declaration on his part that the track was to be operated as a public highway, subject to public rights and public control. This is true, notwithstanding that the track was constructed primarily to serve his own industry. [Hairston v. Railway Company, 208 U. S. 598, 607; Union Lime Co. v. Railway, 233 U. S. 211, 221.] And now after having received the franchise, and caused a track to be constructed under and pursuant to the terms of the grant, and put into operation, he will not be heard to say that the part of the track that is on his premises is his private property and in no way impressed with a public use.

It follows that the judgment of the circuit court, annulling the order of the Public Service Commission, should be reversed. It is so ordered. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAG-LAND, C., is hereby adopted as the opinion of the court. All of the judges concur.