JOSEPH B. JOHNSON, ESTELLA JOHNSON AND DOROTHY GRAHAM v. ROBERT E. FERGUSON, LAURA B. FERGUSON, CHARLES THOMAS, MISSOURI PACIFIC RAILROAD COMPANY, CITY OF SEDALIA AND PETTIS COUNTY, Appellants.—44 S. W. (2d) 650.

Division One, December 21, 1931.

364

*George K. Brasher, George F. Longan* and *Montgomery & Rucker* for appellants.

*A. L. Shortridge* and *Paul Barnett* for respondents.

HYDE, C.—This action was begun in the Circuit Court of Pettis County on April 6, 1928. Plaintiffs' petition alleged that plaintiffs owned land in Pettis County, thus described:

"The northeast quarter of the northwest quarter of Section 5, in Township 45, Range 21, except a strip fifty feet wide off of the west side thereof, which belongs to Missouri Pacific Railroad Company and which is a part of said railroad right of way, and except a strip thirty feet wide off of the east side thereof, which is a part of the public highway, and except a rectangular tract described as follows: Beginning at a point in the west line of Minter Avenue or State Fair Boulevard, a public highway, *699 feet south and 30 feet west of the northeast corner of the northwest quarter of the northeast quarter* of said Section 5, thence running south along the west line of said State Fair Boulevard *230 feet*, thence running *west 270.51 feet*, thence running *north 230 feet*, thence running *east 270.51* to the place of beginning."

Plaintiffs alleged that on November 28, 1892, the owners of the east half of Lot 2 of the northwest quarter, which is the correct description of the land described as the northeast quarter of the northwest quarter (hereinafter referred to as the "fractional 40 acres"), executed, acknowledged and recorded a plat, designated as Dundee Place (including other land), as an addition to the city of Sedalia; but that it was outside of the city and was never accepted by the city. They sought a decree that their land was not affected by the plat.

Defendants Ferguson filed a separate answer admitting the execution and recording of the plat and their ownership of Block 21 thereof, but stated that the northeast corner of their land was *765 feet south and 30 feet west of the northeast corner* of the fractional 40 acres in which it is located and that its dimensions were *South 317 feet, West 290 feet, North 299 feet and East 278 feet*. They pled estoppel against plaintiffs by reason of the sale of lots by their predecessors in title, with reference to the plat of Dundee Place and

the exception, referring to it, in plaintiffs' deed. Defendants asked the plaintiffs' land be declared subject to the right of defendants and the public to use the streets and alleys platted. Defendant Thomas and the defendant railroad filed separate answers setting up substantially the same facts and praying the same relief. The defendant county filed merely a general denial, and defendant city filed no answer. Plaintiffs' reply denied the new matter and alleged defendants Ferguson were estopped to claim any rights in the streets and alleys because they bought, occupied and claimed parts of the land shown by the plat as streets and alleys.

The evidence was that the makers of the plat of Dundee Place were the common source of title of all parties, and that prior to the execution of the plat they had executed a trust deed upon the fractional 40 acres. Thereafter, on February 7, 1893, the John B. Farwell Company acquired the title of the makers of the plat in the fractional 40 acres subject to the trust deed. The Farwell Company sold five lots, in Block 21 of Dundee Place, and obtained for the purchaser a release of these lots from the trust deed. Then, on May 3, 1894, the deed of trust was foreclosed. The land was purchased at the sale by the Porter Real Estate Company, which in a few days conveyed it back to the Farwell Company. The Farwell Company, by three separate conveyances in the years 1895, 1896 and 1899 conveyed five more lots of Block 21 of Dundee Place to the purchaser of the first five and the remaining ten lots to another purchaser. All of Block 21 was finally acquired by a remote grantor of defendants Ferguson. Fergusons acquired title to Block 21 on November 19, 1919. The Farwell Company, on August 8, 1906, conveyed the fractional 40 acres, except Block 21 of Dundee Place and except another tract north of it described by metes and bounds, to one Reifheisen. Through subsequent conveyances, plaintiff Estella Johnson's deceased husband, Joseph W. Graham, and his brother became, on July 18, 1910, the owners of all of the fractional 40 acres, except Block 21 of Dundee Place and except the strips taken for the railroad on the west and the highway on the east. Mrs. Johnson and her daughter inherited her deceased husband's title. Her second husband, plaintiff Joseph B. Johnson, bought the other interest. The Grahams and Johnsons used the land for farming, as did their grantor.

In the original plat there was a street along the east side of the fractional 40 acres described as Minter Avenue. The evidence was that this street was not opened for several years, after the recording of the plat, but that, about 1900, a street was opened up, from Main Street Road, along the north line of the land, to the State Fair grounds farther south, called State Fair Boulevard. This boulevard was opened over the ground, through Dundee Place, designated as

Minter Avenue. Minter Avenue, except possibly a part for an out-let from Block 21 to Main Street Road, was not used as a street prior to that time. About 1908 all of the plat of Dundee Place between the State Fair Boulevard and the west limits of the city of Sedalia was legally vacated, and some ten years later, in November, 1919, the west limits of Sedalia were extended west to State Fair Boulevard.

The only evidence of any other street shown on the plat being open or used was that of defendant Thomas. He hauled building material for his home, in 1898, out one of the streets of the city and across Dundee Place, to his land west of the railroad. He testified he located his house so it would be accessible by such street when opened. He had to open several gates to get through, and no further use of this route was shown. The railroad was built about 1900 and its right of way fenced without openings for it. There was no evi-dence of any use of the fractional 40 acres for other than farming purposes. It was fenced and cross-fenced into fields and pastures. Defendants Ferguson and their grantor had a fence on three sides of Block 21, which took in part of the streets around it, and a barn across the alley platted through the middle of the block. Defend-ant Robert E. Ferguson, however, testified that they were willing to open them. The county surveyor testified that the correct de-scription of the land, enclosed within Ferguson's fences, was that stated in their answer. It was admitted that the land embraced in Dundee Place was all outside the city limits when the plat was filed, and for 28 years thereafter. The fractional 40 acres is still all outside the city of Sedalia. There is no evidence in the record that the description of Ferguson's land in plaintiffs' petition is cor-rect.

The court found for the plaintiffs and entered a decree finding that plaintiffs were the owners of the land described in their petition and that defendants had no right therein; ''that at no time were those parts of said real estate designated as streets and alleys by a plat on said land belonging to the plaintiffs ever opened to the public,  .   .   . and that no part of said designated streets and alleys was ever improved or laid out by the city of Sedalia or any other person;'' and that the plat was an unaccepted offer.

Defendants have appealed therefrom and assign a number of errors which amount to the following contentions: First, That there was a common law dedication, by reason of the sale of the various lots by the Farwell Company by reference to the plat, which is irrevocable; Second, That by reason of Section 1314, Revised Statutes 1919, now Section 859, Revised Statutes 1929, the rights of defend-ants and the public cannot be lost by any period of adverse pos-

session; Third, That there is an error in the description of the land, in the decree, which should be corrected.

Defendants do not contend that there was a statutory dedication by recording the plat in accordance with any statutory method of dedicating land to a city or county. Neither was there any common law dedication by the makers of the plat; there being no showing that they sold any lots with reference to the plat, opened any streets or did anything which could constitute a common law dedication. Instead, they sold all of the fractional 40 acres to the Farwell Company. Furthermore, at the time the plat was recorded and at the time the whole tract was conveyed to the Farwell Company, there was already existing a deed of trust covering it, which was afterwards foreclosed. The purchaser at the foreclosure sale took title to the land free and clear of any effect from filing the plat. [Granite Bituminous Paving Co. v. McManus, 244 Mo. 184, 148 S. W. 621; Stewart v. Perkins, 110 Mo. 660, 19 S. W. 689; Hays v. Perkins, 109 Mo. 102, 18 S. W. 1127; McShane v. City of Moberly, 79 Mo. 41; 18 C. J. 46, Sec. 21; 8 R. C. L. 885, sec. 7.] After this foreclosure, therefore, the plat was a nullity, totally void, and the property was in the same condition as though no plat had ever been made. We do not overlook the fact that there had been released from the mortgage, five of the lots in Block 21, prior to its foreclosure. But such a mere release of these lots, under the above authorities, could not be construed to also release all of the land platted as streets and alleys when they had never been opened or used. We do not understand appellants to so contend. Under the circumstances, the reference in the release must have been for the purpose of description only. See 18 C. J. 61, sec. 47. The trial court was correct in finding that the plat was an unaccepted offer. Therefore, plaintiffs' title is not affected by the streets and alleys shown on the plat unless there was a later valid common law dedication of them.

Defendants contend that the Farwell Company made such a common law dedication, after repurchasing the land from the purchaser at the foreclosure sale, by making three separate conveyances of the remaining fifteen lots of Block 21 of Dundee Place by the description shown on the original plat. They say that this was an adoption of the plat by the Farwell Company and that these conveyances have the effect of dedicating all the streets and alleys, shown on it, the same as though the plat was made and recorded by the Farwell Company. In support of this contention they cite 18 Corpus Juris, page 60, sec. 45, and cases there cited, and Longworth v. Sedevic, 165 Mo. 221. In the Longworth case the sale with reference to the plat was one circumstance in the creation of the estoppel, but there was also a recognition and use of the street by

the parties, the public, and the town authorities. It may also be noted, here, that this court has made a distinction between the sale of lots with reference to a plat, which is absolutely and wholly void, and therefore a nullity, and the sale of lots with reference to a plat, which is merely defective or insufficient under the statute; holding that in the former case references thereto are to be considered as for descriptive purposes, while in the latter they would evidence an intent to dedicate the streets shown on the plat. [Hayes v. Kansas City, 294 Mo. 655, 1. c. 669, 242 S. W. 411.]

Implied or common law dedication operates not as a grant but upon the principle of an estoppel. [18 C. J. 38, sec. 1, and p. 57, sec. 41; 8 R. C. L. 906, sec. 31; Rutherford v. Taylor, 38 Mo. 315; Perkins v. Fielding, 119 Mo. 149, 24 S. W. 444; Richards v. Public Service Commission, 293 Mo. 625, 239 S. W. 838; Byam v. Kansas City Pub. Serv. Co., 328 Mo. 813, 41 S. W. (2d) 945.] The general principle of estoppel is that "a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon." [10 R. C. L. 689, sec. 19.] Or, as stated in 21 Corpus Juris, page 1119, sec. 122, a requisite of equitable estoppel is "an act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party." Dedication requires an intent to dedicate and an acceptance by the public. [18 C. J. 72, sec. 67; 8 R. C. L. 889, sec. 12.] In the case of dedication by estoppel (common law dedication) the dedicator's intention may be presumed from his acts. "Upon an inquiry into a dedication in pais the intent to be ascertained is not the secret intent of the owner but that intent manifested by his acts and declarations." [Perkins v. Fielding, 119 Mo. 1. c. 162.] "Such purpose . . . is to be gathered from the open and visible conduct of the owner, and it sometimes happens that his acts and declaration clearly evince an intention to dedicate lands, to a public use, when in fact he has no real intention of doing so. In such case if individuals and the public act upon the owner's intention as so manifested, he is precluded from resuming his right of private property over the land, if his so doing would operate as a fraud upon them." [Richards v. Public Service Comm., 293 Mo. 1. c. 634.]

However, "the acts or declarations of the owner relied on to establish it must be convincing and unequivocal, indicating, expressly or by plain implication, a purpose to create a right in the public to use the land adversely to himself." [Richards v. Public Service Commission, supra.] "In a case, therefore, where, without judicial proceeding or compensation, or solemn form of conveyance, it is sought to establish in pais, a divestiture of the citizen's

landed property in favor of the public, the proof ought to be so cogent, persuasive and full as to leave no reasonable doubt of the existence of the owner's intent and consent." [Landis v. Hamilton, 77 Mo. 554, l. c. 561; see, also, Rector v. Hartt, 8 Mo. 448; Brinck v. Collier, 56 Mo. 160; Vossen v. Dautel, 116 Mo. 379, 22 S. W. 734; Carpenter v. St. Joseph, 263 Mo. 705, 174 S. W. 53; Mulik v. Jorganian (Mo. App.), 37 S. W. (2d) 963.]

While an acceptance is essential to a complete and irrevocable common law dedication (8 R. C. L. 898, sec. 22; 18 C. J. 22, sec. 67; Landis v. Hamilton, 77 Mo. 554; Kemper v. Collins, 97 Mo. 644, 11 S. W. 245; Baker v. Vanderburg, 99 Mo. 378, 12 S. W. 462; Vossen v. Dautel, 116 Mo. 379, 22 S. W. 734), under the authorities the acceptance may be by formal action, by public work thereon, by use by the public, or by building upon or otherwise improving abutting property in reliance thereon. Prior to the Act of 1887 (now Sec. 11181, R. S. 1929), no formal acceptance by ordinance was necessary for even a statutory dedication. [Otterville v. Bente, 240 Mo. 291, 144 S. W. 822.] It has also been held, under the circumstances of some cases, "that the purchase of lots is in effect an acceptance by the public, and that the purchase of a single lot is sufficient to perfect the dedication." [18 C. J. 120, sec. 149.]

Such cases are no doubt correctly decided upon their facts, but we are cited to no case, and find none, which holds that sale of lots by the description shown on a plat is, under all circumstances, conclusive evidence of both intent to dedicate and acceptance by the public; or that such sale is, under all circumstances, as a matter of law, a dedication. A reference to a plat may, under the circumstances of the case, be for purposes of description only. [18 C. J. 61, sec. 47; Hayes v. Kansas City, 294 Mo. 655, 242 S. W. 411.] In every authority, contained in appellants' comprehensive and able brief, there is, in addition to a sale of lots, some other fact or circumstance which clearly shows such reliance, by purchasers or the public, on the proprietor's acts as a dedication, that he should be estopped to deny that he did make the dedication. There was actual use for a long time by the public of the street or streets in controversy in McGinnis v. St. Louis, 157 Mo. 191, 57 S. W. 755; Buschmann v. St. Louis, 121 Mo. 523, 26 S. W. 687; and Longworth v. Sedevic, 165 Mo. 221, 65 S. W. 260. The city improved some of the streets shown on the plat and included all of them in the official maps of its streets in Hatton v. St. Louis, 264 Mo. 634, 175 S. W. 888. The city did not improve the street to its full limits, but did improve the greater part of it in Columbia v. Bright, 179 Mo. 441, 79 S. W. 151. The city opened all of the streets, in the addition, to travel except one end of an alley which defendants had fenced up in Caruthersville v. Huffman, 262 Mo. 367, 171 S. W. 323. Likewise, in K. C. & N. C.

Railroad Co. v. Baker, 183 Mo. 312, 82 S. W. 85, where the railroad's interest, acquired through dedication, was held not to be lost in a small part of the tract by adverse possession; it had occupied and used the larger portion of the tract, for the purposes for which it was dedicated, for many years. The dedicator, in Heitz v. St. Louis, 110 Mo. 618, 19 S. W. 735, made positive statements as to the dedication at the auction sale where the streets and alleys were marked out on the ground and also afterward made positive statements as to the dedication. Furthermore, in all of these cases the district had been built up and was urban in character. In Robinson v. Korns, 250 Mo. 663, 157 S. W. 790, there was a valid statutory dedication and the court said that the title to an unopened street vested thereby was not divested by any period of adverse possession.

The burden of proof to establish a dedication was upon defendants setting it up. [18 C. J. 93, sec. 101.] Defendants' evidence here is not to us "so cogent, persuasive and full as to leave no reasonable doubt" of an intent to dedicate by the Farwell Company, in making the conveyances relied upon, nor of any action of the public, defendants or their grantors, in reliance thereon, which justifies the application of dedication by estoppel. Instead, all of the acts and conduct of the owners of both tracts and the public negatives the idea of a dedication by the subsequent conveyances. Neither before nor after the sale of the lots in Block 21 was any street in the part of Dundee Place, located on the fractional 40 acres, opened or used by the public. The whole block many years ago came into the hands of one owner. At the same time all the rest of the tract came into the hands of another owner who used it solely for farming purposes. The owners of Block 21 built a fence around it, including therein part of the platted streets, and built a barn across the alley laid out through it. Although defendant Thomas hauled lumber across it, he was only able to do so by opening other people's gates. It was not shown that anyone else ever did even that. While the county road, known as State Fair Boulevard, was opened along the east side of the tract, its purpose seems to have been to furnish an outlet from the highway on the north to another road and the State Fair grounds, located a considerable distance south of the fractional 40 acres. It was, apparently, the only street or road any of the owners of the property ever desired, and they got along, without it, for many years.

The owners of the land, east of the tract in controversy, had the part of the plat of Dundee Place, which was located thereon, annulled by action of the county court twenty years before this suit was brought. Even today the city of Sedalia has not extended its boundaries to take in any part of the land owned by plaintiffs and defendants. The whole scheme to create this addition to that progressive city seems to have been founded upon optimism not war-

ranted by fact. It seems reasonable that what happened was, that the bottom fell out of the real estate boom, and that the Farwell Company, brought to face that stern reality by the foreclosure of the mortgage, undertook to salvage what it could by selling the land to be used again for farming purposes. The land originally was a farm, in spite of promoters' visions it remained a farm, and it is still a farm today. All the previous owners of both tracts have, so far as the record shows, so recognized it, and taxes have always been paid on it as such. Plaintiffs became the owners of their land after it had so remained, for over fifteen years, after the foreclosure. The record does not show any good reason why a court of equity should, by its decree, bring back to life this plat, once *nullified* but now rising ghostlike out of the past to haunt the owners of a peaceful farm, by opening up streets and alleys through plaintiffs' fields and pastures. It does not appear that to do so would be of any substantial benefit to defendants. If almost forty years of development of the thriving city of Sedalia will not build the city upon this farm, there is no magic, in a judicial degree, to do it. We could only make it impossible for plaintiffs to continue to use it for the purposes for which it has always been used.

The situation is similar to that commented upon in Hayes v. Kansas City, 294 Mo. l. c. 670. This court, there, noting that "many transfers of lots and blocks within Bismark Place had been made, with reference to the plat thereof, by parties other than appellants and that the city, after having embraced such platted addition within its corporate limits, had graded, paved and otherwise improved many streets therein," said, as to the contention that this was sufficient to vest all of the streets marked on the plat of Bismark Place in the City:

"Admittedly the city did not extend its boundaries to Bismark Place for more than ten years after the attempted statutory dedication. During those years the plat filed was a nullity for all urban purposes, and all reference thereto in the transfers of property were necessarily for descriptive purposes, and not in reliance upon the streets and avenues marked thereon. If, when the city embraced Bismark Place, there were those property owners therein who then elected to treat such streets and avenues so far as their property was affected thereby as dedicated to the city, and if the city elected to treat such streets and alleys as accepted, then, undoubtedly, the property owner and the city enjoyed the right to dedication and acceptance in so far as individual properties were concerned, but those property owners who did not thus offer such streets and alleys, affecting their property to the city for its acceptance, the same could not be taken without their consent or without compensation. If the original plat had been merely defective and insufficient under the statute, then a different question might arise, but the original

plat was a nullity, and being a nullity the property owners were not affected thereby, unless, as stated, they elected, after the city had extended its limits, to initiate the processes of a common-law dedication, and in that event such property owners could not by their act bind non-consenting or unwilling property owners.''

We hold that defendants' showing, here, is not sufficient to invoke the doctrine of dedication by estoppel against plaintiffs. Defendants' contentions, that a common law dedication, once made, is irrevocable, and that the rights of landowners and the public, vested thereby, cannot be lost by any period of adverse possession, commencing after the Act of 1865 (now Sec. 859, R. S. 1929) went into effect, are correct. They are fully sustained by the authorities herein cited. This case does not turn on adverse possession, but upon the failure to show a dedication.

Appellant also claims an estoppel by deed against respondents. This contention is based on the fact that the Farwell Company conveyed to appellant's remote grantors by a description referring to the plat of Dundee Place and thereafter conveyed the rest of the land to respondents' remote grantors by a deed which by exception referred to the plat; which exception appeared in all the deeds in respondents' chain of title. We have, however, held that the reference in these deeds to the plat of Dundee Place was, under the circumstances of this case, for descriptive purposes only. We therefore deem it unnecessary to enter into a discussion of the subject of estoppel by deed. ''A map referred to in a deed may serve as evidence of the location and surroundings of the property to be conveyed, without operating as an estoppel.'' [21 C. J. 1095, sec. 80.] See, also, 19 C. J. 929-931, secs. 128-130; Beach Front Hotel Co. v. Sooy, 197 Fed. 881, 118 C. C. A. 579.

It is necessary, though, to correct the description of plaintiffs' land contained in the decree. There is no basis in the evidence for the call ''699 feet south and 30 feet west of the northeast corner'' of the fractional 40 acres. Plaintiffs allege that the Fergusons bought, occupied and claimed title to part of the land included in the plat in streets. It is evident that the fences had been where they now are for at least twenty years before the suit was brought. It will be important to all parties to prevent future litigation by now correctly describing the land they own. Plaintiffs' land should be described in the decree, in accordance with the testimony and plat of the county surveyor, as follows:

''The east half of Lot 2 of the northwest quarter of section 5, township 45, range 21, in Pettis County, Missouri, except a strip 50 feet wide off of the west side thereof which belongs to the Missouri Pacific Railroad Company, and except a strip 30 feet wide off of the

east side thereof, which is a part of the public highway, and except a tract described as follows:

"Beginning at a point on the west line of State Fair Boulevard, a public highway, 765 feet south and 30 feet west of the northeast corner of the east half of Lot 2 of the northwest quarter of said section 5, thence south along the west line of said State Fair Boulevard 317 feet, thence in an westerly direction 290 feet to a point 278 feet west and 299 feet south of the place of beginning; thence north 299 feet; thence east 278 feet to the place of beginning."

The decree, as it is written, states only findings of fact. It contains no final judgment order, except as to costs, and is not in form a complete final judgment. It should be amended to add an order vesting the title of the above described land in plaintiffs, free and clear of any rights of defendants or the public in the streets and alleys shown in the plat of Dundee Place filed for record in the office of the recorder of deeds on November 28, 1892, and recorded in Book 2 at page 12 of the records of Pettis County, except such part of said land included in State Fair Boulevard as now located. The order should also declare the plat to be null and void and of no force or effect and should vest title in Robert E. and Laura B. Ferguson to the above excepted tract.

The judgment of the circuit court is reversed and the cause remanded, with directions to that court to enter a decree in favor of plaintiffs, in accordance with the views herein expressed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.