**Alfred L. ABNEY and Dosha M. Abney, Plaintiffs-Appellants,**

**v.**

**John TURNBOUGH and Nettie Turnbough, Defendants-Respondents.**

**No. 33811.**

St. Louis Court of Appeals, Missouri.

Feb. 23, 1971.

Marvin L. Dinger, Dinger & Mack, Frank G. Mack, Ironton, for plaintiffs-appellants.

Dearing, Richeson, Roberts & Wegmann, Nicholas G. Gasaway, Hillsboro, for defendants-respondents.

WOLFE, Judge.

On March 18, 1968, plaintiffs brought this action in equity to enjoin the defendants from interfering with the plaintiffs' use of a roadway running from plaintiffs' property across defendants' property to State Highway C in Washington County. They alleged that the road was dedicated to Washington County as a public road and that the defendants were locking gates across the road preventing the plaintiffs' use of it. Bond was posted by the plain-

tiffs and a temporary injunction was granted restraining the defendants from interfering with the use of the road until final judgment in the matter. The final judgment was for the defendants and the court awarded them damages against the plaintiffs in the sum of $300.00 for loss of pasturage and attorneys' fees.

The plaintiffs appealed to the Missouri Supreme Court and it comes to this court by transfer. Abney v. Turnbough, Mo., 451 S.W.2d 134.

The defendants own land in Washington County. Highway C runs north and south and goes through the acreage owned by the defendants. Their home is on the east side of Highway C and part of the acreage on the other side of the highway extends westwardly down to the property line of the plaintiffs. The plaintiffs own 140 acres and their land is bordered on the west by Courtois Creek which runs north and south. On the other side of the creek is a county road known as Crabtree Road which is reached from plaintiffs' property by fording the creek which normally has a depth of about twelve inches of water. Plaintiffs' house is about one-quarter of a mile from the creek.

The plaintiffs acquired the property in 1965 from a man named Sellers and at the time they purchased it the gravel road here in question extended from Highway C down from defendants' property to plaintiffs' house as it does now. Both Mr. Sellers and defendant Turnbough had attempted to have the county build a road through their property west from Highway C, crossing the creek and connecting with Crabtree Road. Turnbough talked to the county court and told them he would give the county an easement if the county would so construct the road. No easement was ever given and the road was never constructed past the Sellers' house. The road, as it is, was constructed by the county in the late fall of 1960. As stated, it ended then as it does now at the house of Sellers, the plaintiffs' predecessor in title. The

county constructed and graded some private roads at that time and until 1965. Across the east end of the road where it entered Highway C, Turnbough had built a cattle guard crossing it and another cattle guard crossing it to the west near Sellers' property. These had been there since the road was built. Sellers also had a gate at the end of the road by his house but he never closed it. When closed it shut off entrance to a trail leading to the creek.

Before this action was brought, plaintiff Abney went to the county court and asked if the road was a public road. He was told that it was not and that there was no county record of it being. He was also told that Turnbough was willing to dedicate it by deed as a county road and it could be done if he, Abney, and his wife would do likewise. Abney was given a required form of deed but it was never executed. Abney locked the gate at his end of the road and otherwise obstructed passage to the creek, and Turnbough put a fence across his cattle guards. This occurred about a month before this action was brought. There was evidence that the road was constructed by the county and it was graded about once a year after its construction. There was evidence that plaintiffs' friends used the road to get to his house and that the telephone and electric companies used it, and people used it to get down to the creek.

At the outset of the trial of this case counsel for plaintiffs stated that they were not relying on a statutory establishment of the road as a public highway. The statute is § 228.190, V.A.M.S., and it provides that a road shall be deemed a public road after being used as such continuously for ten years and upon which there has been expended public money or labor for such period. Plaintiffs conceded that their evidence does not support either time, use or expenditure of money for the statutory period. They rest their case upon a common-law dedication of the road to public use. We are cited to Hoechst v. Ban-

gert, Mo., 440 S.W.2d 476, 1. c. 478, in which the court said: "'* * * The rule is, so far as applicable to this case, that when the proprietor does some act which clearly indicates his intention to dedicate land to the use of the public as a street or alley, and the public by its act clearly indicates its purpose to take and accept the dedication and actually uses it for the purpose indicated for such a length of time as to show its intention to accept the offer implied by the act of the proprietor, these concurrent acts constitute a complete common-law dedication independently of the operation of the statute of limitations.' * * *." In that same case it was also said, 1. c. 478, that the first requirement of a common-law dedication was "'* * * That the owner, by his unequivocal action, intended to dedicate to public use; * * *.'" In that case there was an instrument signed by the land owner which stated that they "'do hereby *dedicate to public use forever, for highway purposes a strip of land 100 feet wide, * * *.'"* It was held that this, followed by public use, constituted a common-law dedication.

 We have no such situation here. Plaintiffs' contention was that the road was built to give the public access to the creek and yet at the same time plaintiff Abney admitted blocking road at their end in such a manner as to shut off access to the trail leading to the creek. This in itself was not consistent with their theory. In Johnson v. Ferguson, 329 Mo. 363, 44 S.W.2d 650, 1. c. 653, the Missouri Supreme Court stated: "* * * 'the acts or declarations of the owner relied on to establish it must be convincing and unequivocal, indicating, expressly or by plain implication, a purpose to create a right in the public to use the land adversely to himself.' Richards v. Public Service Commission, supra [293 Mo. 625, 239 S.W. 838]. 'In a case, therefore, where, without judicial proceeding or compensation, or solemn form of conveyance, it is sought to establish in pais a divestiture of the citizen's landed property in favor of the public, the proof ought to be so cogent, persuasive and full as to leave no reasonable doubt of the existence of the owner's intent and consent.' * * *."

It cannot be said that there was an unequivocal dedication under the evidence before us, in view of the testimony of defendant Turnbough who stated the only effort to dedicate a road was confined to an effort to connect Highway C with Crabtree Road, and this was never done.

 The damages awarded the defendants arise from the loss incurred by them by reason of being compelled by the temporary injunction to remove the gates. This deprived them of the use of the acreage crossed by the road as pasture land. No question is raised as to the defendants' right to the amount awarded.

We affirm the judgment of the circuit court.

BRADY, P. J., and DOWD, J., concur.